UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>D. GOSS, et al.,<br><br>　　　　Defendants. | Case No.: 1:10-cv-01814 - LJO- JLT (PC)<br><br>ORDER FINDING SERVICE OF THE FIRST AMENDED COMPLAINT APPROPRIATE AND FORWARDING SERVICE DOCUMENTS TO PLAINTIFF FOR COMPLETION WITHIN THIRTY DAYS<br>(Doc. 24)<br><br>FINDINGS AND RECOMMENDATION DISMISSING CERTAIN CLAIMS<br>(Doc. 24) |

Plaintiff Lawrence Christopher Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 24). Plaintiff timely submitted his second amended complaint on May 17, 2013. (Doc. 24). As required by 28 U.S.C. § 1915A, the Court presently screens Plaintiff's second amended complaint.

Accordingly, the Court **ORDERS SERVICE** of: (1) Plaintiff's First Amendment retaliation claims against Lt. Goss and Officer Langler, and (2) Plaintiff's Eighth Amendment claims of inadequate medical care against PA Byers and Lt. Gallagher. The Court **RECOMMENDS** that the remaining claims and Defendants be **DISMISSED without leave to amend.**

I.　　SCREENING REQUIREMENT

Because Plaintiff seeks redress from governmental employees in a civil action, the Court is

1

required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II.   PLEADING STANDARDS

### A.   Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (*quoting* Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

///

**B.     42 U.S.C. § 1983**

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See* Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## III.    COMPLAINT

Portions of Plaintiff's cause of action arose while he was incarcerated at the California Substance Abuse Treatment Facility and State Prison ("CSATF/SP") located in Corcoran, California, and at the Kern Valley State Prison ("KVSP") located in Delano, California. (Doc. 24 at 12). Plaintiff names the following CSATF/SP personnel as defendants to this matter: (1) Lieutenant ("Lt.") D. Goss, (2) Lt. Gallagher, (3) Officer T. Langler, (4) Physician Assistant ("PA") Byers, (5) Chief Medical Officer Dr. Enemoh, and (6) "O. Beregostva, Medical Doctor" or O. Beregovskaya, M.D. Id. at 1, 9. Plaintiff also names the following KSVP staff as Defendants to this matter: (1) Sergeant ("Sgt.") A. Sotelo and (2) Officer Anderson, the property clerk of the Administrative Segregation ("Ad. Seg.") Unit at KVSP. Id. at 1, 16. Finally, Plaintiff names Defendant Doe, the property clerk of California State Prison – Corcoran ("CSP-Corcoran").[1] Id. at 16. Plaintiff seeks monetary recompense and states his complaint as follows:

On an undisclosed date, an unnamed officer at CSATF/SP made unwanted sexual advances toward Plaintiff. (Doc. 24 at 3) Plaintiff filed an inmate grievance against the officer. Id. at 3-4. Lt. Goss presided over the administrative hearing on this grievance, at which time he suggested that Plaintiff may have misinterpreted the officer's intentions. Id. Lt. Goss next requested that Plaintiff

---

[1] In addition to the defendants named in his second amended complaint, Plaintiff previously named Warden Allison, R.N. S Ogar, R.N. D. Ybarra, H. Carn, and Officer Galindo, as defendants in his prior complaints. To the extent that Plaintiff has not reasserted his claims against these Defendants, he has waived them. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted). Accordingly, the Court **RECOMMENDS** that these parties be **DISMISSED**.

3

withdraw his grievance and, when Plaintiff refused, Lt. Goss destroyed Plaintiff's administrative complaint. Id. Also, he threatened future reprisals. Id.

In April of 2010, Plaintiff and his cellmate engaged in an altercation, resulting in serious injury to his cellmate. (Doc. 24 at 5)  Plaintiff was charged with attempted murder of an inmate and received a Rules Violation Report ("RVR"). Id.  On June 14, 2010, Lt. Popper conducted a hearing on the charge and, as a result, ordered an independent investigation of the incident. Id.

On June 19, 2010, Lt. Goss conducted a second hearing on the murder charge without the completion of the independent investigation. (Doc. 24 at 5)  Lt. Gallagher, the CSATF/SP Ad. Seg. supervising lieutenant, falsely testified that Plaintiff was unruly at this hearing. Id. at 6.  None of the witnesses Plaintiff wished to call to testify at the hearing were made available. Id.  Lt. Goss falsely reported that Plaintiff was uncooperative at the hearing and that "Plaintiff acted in concert with an accomplice." Id.  Nonetheless, prison personnel subsequently acquitted Plaintiff of this alleged rules violation. Id.

In an unrelated claim, Plaintiff reports that he has deformed lower legs and has been diagnosed with a moderate "case of bowlegs (sic)"and has "flat feet" which requires him use orthopedic shoes and inserts. (Doc. 24 at 7-8)  Following the April 24, 2010, altercation with his cellmate, Officer Cribbs confiscated and placed Plaintiff's orthopedic shoes in an evidence locker because they had blood stains on them. Id. at 8.  Plaintiff had no other shoes and was forced to walk barefoot to Ad. Seg. Id.

Also on April 24, 2010, Plaintiff sought to access CSATF/SP's law library, as he had a pending writ of habeas corpus that attacked his conviction and was facing attempted murder charges. (Doc. 24 at 13)  CSATF/SP officials granted Plaintiff "general library user" status in late May of 2010. Id. at 14.  The research materials at the library were over four years old and he was not provided any means to Shepardize his legal materials. Id. at 14-15.  Officer Langler subsequently offered to implement an "inmate paging services." Id. at 15.  Nevertheless, Plaintiff reports he was banned from the law library due to his inmate grievance against Lt. Goss. Id. at 15.

In June 2010, P.A. Byers met with Plaintiff concerning pain in his lower extremities. (Doc. 24 at 8.)  Plaintiff "attempted to talk to P.A. Byers reasonably as well as attempted to have him examine

(sic) Plaintiff's feet." Id. at 9. P.A. Byers did not examine Plaintiff's feet, despite the development of "foot ulcers and callouses" from his state-issued shoes and his "severely flat feet" condition. Id. at 8-9. Because Byers found only that Plaintiff had been issued regular shoes, he refused to authorize replacement orthopedic shoes. Id. at 9.

After an appeal, prison officials determined Plaintiff, indeed, had been issued the inserts but they found no record of his having been issued orthopedic shoes. (Doc. 24 at 9) Thus, they permitted Plaintiff to have his orthopedic arch supports restored to him but did not order return of the orthopedic shoes. Id. Instead, medical staff was required to review the shoes and determine whether they were medically necessary. Id. Lt. Gallagher was in charge of returning the insoles. Id. at 9-10. Gallagher refused to return Plaintiff the orthopedic shoes—despite reviewing the shoes and consulting with medical staff and despite being aware they were needed for the insoles to work. Id. Thus, he determined the shoes were "personal property" which was not permitted in Ad. Seg. Id. at 9. Plaintiff attempted to show Gallagher that the shoes were specially made to accommodate the inserts and told him they would not fit in regular prison shoes. Id. at 10. Gallagher stated he was aware of this and then laughed. Id.

In April 2011, Plaintiff was transferred to KVSP, and by this time he had begun to develop foot calluses and bunions. (Doc. 24 at 11) Plaintiff saw a podiatrist who issued a medical chrono which enabled Plaintiff to wear orthopedic shoes and arch supports. Id. at 11-12.

On March 13, 2013, due to inmate grievances filed against several officers, Sgt. Sotelo and Officer Castro confiscated Plaintiff's orthotics and forced him to walk barefoot to KSVP's "program office holding cell area." Id. at 12. En route to the program office and while barefoot, Officer Castro stomped on Plaintiff's left foot. Id. Similarly, Sgt. Sotelo stomped on Plaintiff's right foot and caused damage to his right big toe. Id. Shortly thereafter, Sgt. Sotelo unleashed a series of foul statements concerning Plaintiff's orthopedic shoes. Id.

## IV.   DISCUSSION AND ANAYLSIS

As a preliminary matter, Plaintiff has not identified any causes of actions against Defendants in his complaint. As a result, Plaintiff has not carried his burden to state claims with specificity. *See* Iqbal, 129 S.Ct. at 1948-49*;* Bell Atlantic Corp v. Twombly, 550 U.S. 544, 554 (2007) (a plaintiff

must set forth more than conclusions and include "the grounds of his entitlement to relief"). Nevertheless, based on the factual allegations above, it appears Plaintiff seeks to proceed on claims for retaliation, denial of access to the courts, inadequate medical care, violation of due process and a new Eighth Amendment claim of cruel and unusual punishment.

### A. Supervisor Liability

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948–49 (2010). Liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior,* as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); *accord* Starr v. Baca, No. 09–55233, 2011 WL 477094 *4–5 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir.2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir.2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.1997).

Here, Plaintiff indicates that Dr. Beregovskaya and Dr. Enemoh did nothing more than review Plaintiff's inmate grievance against P.A. Byers. (Doc. 24 at 9). Although Plaintiff names Dr. Beregovskaya for the first time in his current complaint, his sole complaint against Dr. Beregovskaya is based on the handling of Plaintiff's inmate grievance. To that extent, Plaintiff is advised that he has no constitutional right to have his medical grievance reviewed in a particular manner. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Moreover, for the second time, Plaintiff bases his sole complaints against Dr. Enemoh on the theory of *respondeat superior* without providing any factual basis for this claim. (Docs. 18 and 24). The Court finds that permitting Plaintiff to amend his complaint as to these Defendants would be futile. Therefore, the Court recommends that Plaintiff's claims against Dr. Beregovskaya and Dr. Enemoh be **DISMISSED**.

///

**B. First Amendment Claims**

    **1.     Retaliation**

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (*quoting* Rhodes, 408 F.3d at 567-68). An adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (*quoting* Mendocino Envtl. Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Plaintiff alleges he complained about sexual harassment by a male correctional officer. In this process, Lt. Goss destroyed a complaint made by Plaintiff and discarded it because Plaintiff refused to stop pursuing his sexual harassment complaint. (Doc. 24 at 3-4). Previously, this Court has determined a plaintiff stated a cognizable claim when he alleged a correctional officer destroyed an inmate appeal. Leinweber v. Day, 2010 U.S. Dist. LEXIS 35935, at *9 (E.D. Cal. Mar. 13, 2010).

Similarly, Plaintiff indicates that Lt. Goss, "blinded by anger," also retaliated against Plaintiff by issuing a false finding of guilt on the charge of attempted murder, despite Lt. Popper's order for an independent investigation. (Doc. 24 at 5-6). In Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), the Ninth Circuit determined that a cognizable claim of retaliation existed where a plaintiff alleged that he was falsely accused of prison gang activity in retaliation for filing an inmate grievance. 351 F.3d at 1288-1289. Because "[a]n allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983," Plaintiff has stated a cognizable claim against Lt. Goss. *See* Leinweber, 2010 U.S. Dist. at *9 (*citing* Bruce, 351 F.3d at 1288).[2]

In addition, Plaintiff appears to set forth a claim of retaliation against Officer Langler, when he

---

[2] Plaintiff also avers that Officer Anderson's actions were "in concert with established patterns of retaliation by prison officials" without providing any factual support for this conclusion. Thus, the claim is **DISMISSED.**

alleges Langler enforced an unofficial ban that kept Plaintiff from the law library. (Doc. 24 at 15). In support of this contention, Plaintiff alleges that when he confronted Officer Langler about not getting access to the law library, Officer Langler told him that Plaintiff "knew damn well why [he] was restricted from the library like [he was] showing up the Lieutenant like that." Id. It appears that Officer Langler prohibited Plaintiff from accessing the law library because Plaintiff filed a grievance against Lt. Goss. Id. Such an action could reasonably have a chilling effect on a litigant's exercise of their First Amendment rights. White, 227 F.3d at 1228. Thus, taking the complaint in the light most favorable to the Plaintiff, Plaintiff states a cognizable claim against Officer Langler.

### 2. Access to the Courts

Plaintiff asserts a multifaceted First Amendment claim of denial of access to the courts against Officer Langler, Officer Anderson, and Defendant Doe – the Property Clerk at CSP-Corcoran. (Doc. 24 at 13-19). Under the First Amendment, prisoners have a right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). In addition to demonstrating official acts frustrating the inmate's litigation, a prisoner asserting a backward-looking denial of access claim must show the loss of a "nonfrivolous" or "arguable" underlying claim. *See* Christopher v. Harbury, 536 U.S. 403, 413-414 (2002). The underlying claim must be set forth in the pleading claiming a denial of access to the courts "as if it were being independently pursued." Id. at 417. Finally, the plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 415.

A plaintiff must allege "actual injury" as the threshold requirement to any First Amendment claim of denial of access to the Courts. *See* Lewis, 518 U.S. at 351-53. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. The failure to demonstrate an actual injury is jurisdictional. Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a "nonfrivolous legal claim

had been frustrated" is fatal"). As discussed below, Plaintiff fails to state a claim of denial of access to the courts.

                a.      <u>Plaintiff fails to state a claim against Officer Langler.</u>

Plaintiff alleges he was injured when he was denied priority legal user status, when he had to "wrangle" with Officer Langler to get his legal property,[3] and that the law library possessed subpar legal resources. (Doc. 24 at 14).

Notably, inmates do *not* have a "freestanding right" to access a law library or legal assistance. <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996). The accessibility or adequacy of a law library is of constitutional concern only when it thwarts a prisoner from exercising his right to access the courts for the purpose of seeking redress for "claimed violations of fundamental constitutional rights." <u>Id</u>. (*quoting* Bounds v. Smith, 430 U.S. 817, 825 (1977)). Moreover, an inmate must demonstrate that he suffered "actual injury" because of deficiencies in law library access or materials, "such as the inability to meet a filing deadline or to present a claim" in a direct appeal, habeas petition, or a § 1983 action. Lewis, 518 U.S. at 348, 355. As the United States Supreme Court has explained:

> [A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.

Id. at 351.

The age of the law library reference materials and the fact that it offered no method to Shepardize cases indicates nothing more than Plaintiff's assertion that the law library was subpar. Though he complains he submitted a habeas corpus petition to the California court of appeals "without any research into any of the rebuttals," he does not allege that he was prejudiced by doing so. <u>Lewis</u>, 518 U.S. at 351-53. Similarly, while Officer Langler permitted Plaintiff to access the law library only

---

[3] Plaintiff's indication that he had to "await on Correctional Officer Langler for two (2) weeks" implies that Plaintiff eventually received the "legal property" requested. Furthermore, it appears that Plaintiff sustained no injury in awaiting receipt of his "legal property" from Officer Langler. Thus, Plaintiff's claim with regard to his legal property is **MOOT**.

once, he fails to indicate how this restriction caused him an actual injury.[4] Thus, Plaintiff fails to state a cognizable First Amendment claim of denial of access to the courts against Officer Langler. Therefore, Court recommends that the claim be **DISMISSED.**

          b.      <u>Plaintiff fails to state a claim against Officer Anderson</u>.

Plaintiff claims Officer Anderson denied him his legal property which resulted in "adverse rulings in various court proceedings." (Doc. 24 at 17). Plaintiff does not allege facts that these "various court proceedings" were non-frivolous nor does he indicate the bases of his claims. Furthermore, he does not indicate that he sought to access his legal documents during the pleading stage of either his habeas corpus matters or that his petition for writ of mandate related to his underlying conviction or a condition of confinement. Having been previously advised of the legal standard necessary to assert a First Amendment claim, the Court finds that permitting Plaintiff to again amend his claim against Officer Anderson would be futile. Thus, the Court recommends that this claim be **DISMISSED.**

          c.      <u>Plaintiff fails to state a claim against Defendant Doe.</u>

Plaintiff alleges he was injured by Defendant Doe, the property clerk of CSP-Corcoran's SHU facility, when Doe denied him access to his legal property. (Doc. 24 at 16). Plaintiff claims he sought to access the documents for the purposes of filing a "writ of habeas corpus to overturn his RVR hearing, a state bar complaint, and a writ of habeas corpus before the California Supreme Court." <u>Id</u>. While awaiting receipt of this property may have presented an inconvenience to Plaintiff, it does not present any cognizable injury under § 1983. In fact, Plaintiff's admission that he "filed the appropriate appeals…within the Superior Court of California," demonstrates he cannot state a claim. <u>Id</u>. Thus, the Court recommends this claim be **DISMISSED**.

    **C.**      **Eighth Amendment – Failure to Provide Adequate Medical Care**

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (*quoting* <u>Jackson v. Bishop</u>, 404 F.2d 571, 579 (8th Cir. 1976)). The prohibition of cruel and unusual punishment requires

---

[4] Plaintiff also fails to adequately describe the claim underlying his writ of habeas corpus and provides no grounds on which the Court may determine whether he possessed a non-frivolous claim.

that prison officials to provide medical care to prisoners. Id. at 104-05. To state a claim arising in the context of inadequate medical care, a plaintiff must point to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Thus, a cognizable claim has two elements: "the seriousness of the prisoner's medical need and the nature of defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by* WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

Plaintiff alleges he suffers from a congenital defect of his feet in which he has no arch in either foot. (Doc. 24 at 7) Plaintiff alleges this condition is "quite painful to say the least" if not treated. Id. For many years before entering prison and while in prison, he used orthopedic devices. Id. When he entered prison he had the devices in prison and used them faithfully. Id. Eventually, Plaintiff was provided a new pair of orthopedic shoes and "custom-made arch supports and insoles for athletic shoes as well." Id. at 7-8. When he was transferred to Kern Valley State Prison in April 2011, he was seen by a podiatrist who issued him new orthopedic boots. Id. at 11.

Likewise, he alleges that after his arch supports and orthopedic shoes were removed from him and he was forced to wear non-orthopedic shoes, he developed foot ulcers, callouses and bunions and was required to see a podiatrist regularly for months. Id. at 8, 11. Thus, at this early stage in the proceeding, the Court finds these allegations sufficient to demonstrate Plaintiff suffered from a serious medical condition. Coleman v. Wilson, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995).

With regard to P.A. Byers, Plaintiff asserts Byers failed to examine him and refused to prescribe orthopedic shoes. (Doc. 24 at 8-9, 11). Plaintiff explains that he "attempted to talk to PA Byers reasonably as well as attempted to have him examine [his] feet." Id. at 9. PA Byers refused to examine Plaintiff and indicated that the state budget did not allow for orthopedic shoes. Id. It was not until Plaintiff's transfer to KVSP that Plaintiff was examined by a podiatrist who prescribed him a pair of orthopedic shoes. Given Byers' cursory response to Plaintiff's serious medical need, the Court finds that Plaintiff states a cognizable Eighth Amendment claim of failure to provide adequate medical care at this early juncture.

With regard to Lt. Gallagher, Plaintiff indicates he made Lt. Gallagher aware of his need for the orthopedic shoes and the arch supports by demonstrating that the arch supports could not fit into

1 prison-issued shoes. (Doc. 24 at 9-10) Gallagher acknowledged understanding that Plaintiff needed
2 the shoes but refused to allow Plaintiff to have them. Id. Notably, Plaintiff alleges the appeal required
3 medical staff to review the shoes and determine whether they were for a medical need. Id. However,
4 Gallagher looked at the shoes and consulted with medical staff but informed medical staff that the
5 shoes were personal property and would not be allowed in Ad Seg. Id. at 9-10. Taken in a light most
6 favorable to Plaintiff, Plaintiff states a cognizable claim against Lt. Gallagher.

### D.    Procedural due process and disciplinary hearings.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  A plaintiff alleging a procedural due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then demonstrate that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989). McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).  The Due Process Clause in of itself *See also* protects only those interests that are implicit in the word "liberty." *See, e.g.*, Vitek v. Jones, 445 U.S. 480, 493 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to a mental institution).  A state statute or regulation, however, gives rise to a protected liberty interest if it imposes conditions of confinement that constitute an "atypical and significant hardship [on the prisoner] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  This requires a factual comparison between the conditions of confinement caused by the challenged action and the basic conditions of prison life. See Wilkinson, 545 U.S. at 223-24 (placement of prisoners in a highly restrictive "supermax" prison implicated a protected liberty interest).

Here, Plaintiff fails to state a procedural due process claim against Lt. Goss and Lt. Gallagher because he was not deprived of any liberty interest as a result of the June 14, 2010, disciplinary hearing.  Plaintiff's acquittal of the RVR report created by Lt. Goss and the lack of discipline received as a result of the false report moots Plaintiff's claim that Lt. Goss created a false report and failed to make his witnesses available at the hearing.  Similarly, while Plaintiff claims that Lt. Gallagher falsely testified against Plaintiff, the Due Process clause does not guarantee freedom from false testimony.

12

1  *See e.g.*, Kennedy v. Hayes, 1:09-CV-01946-JLT, 2010 WL 5440805 (E.D. Cal. Dec. 28, 2010).

2  In addition, Plaintiff indicates that Goss denied Plaintiff's request to present witnesses by not making them available at the June 14, 2010, disciplinary hearing. (Doc. 24 at 6). The Ninth Circuit has determined that prisoners do not possess an unlimited right to call witnesses at a disciplinary hearing. Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003). However, prison officials are required to "make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." Serrano, 345 F.3d at 1079. It logically follows that a blanket denial of an inmate's right to call witnesses at a disciplinary hearing implicates an inmates' due process rights. *See* Id. Examining the claim in the light most favorable to the Plaintiff, Lt. Goss seemingly refused to permit Plaintiff to present his witnesses at trial without providing any explanation. The fact the witnesses were "unavailable" seems to be nothing more than a pretext for Lt. Goss to deny Plaintiff his due process rights.

Although Plaintiff's due process rights may have been implicated, no deprivation of Plaintiff's liberty occurred. Namely, Plaintiff's RVR that resulted from Lt. Goss' conduct was overturned on appeal. (Doc. 24 at 6-7). Plaintiff fails to indicate that he received any discipline because of the RVR issued by Lt. Goss. Therefore, the Court finds that Plaintiff fails to state a Due Process claim against either Lt. Goss or Lt. Gallagher. Thus, the Court recommends the claim be **DISMISSED.**

**E.    Fed. R. Civ. P. 18(a) does not permit "buckshot complaints."**

Fed. R. Civ. P. 18(a) permits a plaintiff to join as many claims as he has against a single party. However, "[u]nrelated claims against different defendants belong in different suits." Smith v. Anti, Case No. 2:07-CV-1675-GEBGGHP, 2008 WL 5178911 * 1 (E.D. Cal. 2008)(*quoting* George v. Smith, et al., 507 F.3d 605, 607 (7th Cir. 2007). A "buckshot complaint" occurs where a plaintiff files unrelated claims against different defendants in the same suit. *See* Smith, 2008 WL at 1. "Buckshot complaints" violate Fed. R. Civ. P. 18(a).

Despite the prior admonition that Plaintiff may not file a "buckshot complaint," (Docs. 14), Plaintiff has added new, unrelated claims against Sgt. Soltero and Officer Castro. While the Court sympathizes with Plaintiff's situation, Plaintiff's apparent Eighth Amendment claim of cruel and unusual punishment concerning Sgt. Soltero and Officer Castro is wholly unrelated to Plaintiff original

and first amended complaints. *Compare* (Docs. 1 and 18) *with* (Doc. 24). Thus, Plaintiff's complaint against Sgt. Soltero and Officer Castro is a "buckshot complaint" that violates Fed. R. Civ. P. 18(a).[5] Accordingly, the Court recommends the claims against Sgt. Soltero and Officer Castro be **DISMISSED without prejudice.** Plaintiff is free to re-file his claims against Sgt. Soltero and Officer Castro in a separate lawsuit.

## ORDER

Accordingly, it is **HEREBY ORDERED** that:

1. Service of the second amended complaint is appropriate for the following claims: (1) Plaintiff's First Amendment retaliation claim against Lt. Goss and Officer Langler, and (2) Plaintiff's Eighth Amendment claim for inadequate medical care against PA Byers and Lt. Gallagher;

2. The Clerk of the Court shall send Plaintiff four USM-285 forms, four summons, a "Notice of Submission of Documents" form, an instruction sheet, and a copy of the second amended complaint (Doc. 24).

3. Within **thirty (30) days** from the date of this order, Plaintiff shall complete the attached "Notice of Submission of Documents" form and submit the completed form to the Court with the following documents:

   a. One completed summons form for <u>each</u> of the defendants listed above;

   b. A completed USM-285 form for <u>each</u> of the defendants listed above; and

   c. Five copies of the endorsed second amended complaint (Doc. 24).

4. Plaintiff need not attempt service on the defendants and need not request waiver of service. Upon receipt of the above-described documents, the Court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs; and

5. **<u>Plaintiff is cautioned that failure to comply with this order will result in the dismissal of this case.</u>**

///

---

[5] Plaintiff is advised that he may file a separate lawsuit against these Defendants should he wish to do so. He may not, however, pursue this claim in the present matter.

**FINDINGS AND RECOMMENDATIONS**

Based upon the foregoing, the Court **HEREBY RECOMMENDS** as follows:

1. That Plaintiff's supervisory liability claims against Dr. Beregovskaya, and Dr. Enemoh be **DISMISSED without leave to amend;**

2. That Plaintiff's First Amendment claims against Officer Anderson, and Defendant Doe be **DISMISSED without leave to amend;;**

4. That Plaintiff's procedural due process claim against Lt. Goss or Lt. Gallagher be **DISMISSED without leave to amend;**

5. That Plaintiff's Eighth Amendment claims against Sgt. Soltero and Officer Castro be **DISMISSED without prejudice**. Plaintiff is free to refile these complaints in a new lawsuit.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **14 days after being served with these findings and recommendations**, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. **The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order**. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 5, 2013**                              /s/ Jennifer L. Thurston
                                                        UNITED STATES MAGISTRATE JUDGE