UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH,<br><br>  Plaintiff,<br><br>  v.<br><br>D. GOSS, et al.,<br><br>  Defendants. | Case No.: 1:10-cv-01814 - LJO- JLT (PC)<br><br>ORDER VACATING THE ORDER FINDING SERVICE OF THE SECOND AMENDED COMPLAINT APPROPRIATE AND THE FINDINGS AND RECOMMENDATIONS ISSUED JULY 8, 2013<br>(Doc. 25)<br><br>ORDER VACATING THE ORDER DIRECTING THE UNITED STATES MARSHAL SERVICE TO SERVE THE SECOND AMENDED COMPLAINT<br>(Doc. 29)<br><br>ORDER DISMISSING THE SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND<br>(Doc. 24) |

Plaintiff Lawrence Christopher Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 24). On August 1, 2013, Plaintiff submitted his objections to the Court's Findings and Recommendations in which he provides factual allegations which were not contained in his prior complaints. (Doc. 25).[1] Based upon these

---

[1] On July 8, 2013, the Court ordered service of Plaintiff's cognizable claims and recommended dismissal of his remaining claims. (Doc. 25). Plaintiff was granted the opportunity to file his objections to the Findings and Recommendations of Dismissal on or before July 25, 2013. Id. The Court adopted the Findings and Recommendation of

1

additional allegations, it appears Plaintiff may be able to state additional claims. Thus, the Court **VACATES** the July 8, 2013 Order and Findings and Recommendations (Doc. 25) and **VACATES** the Order directing the United States Marshal Service to Serve the Second Amended Complaint. (Doc. 29). Finally, as is required by 28 U.S.C. § 1915A, the Court screens the Second Amended Complaint, and for the reasons set forth below, **DISMISSES** the complaint with a **FINAL** opportunity to amend.[2]

## I.   SCREENING REQUIREMENT

Because Plaintiff seeks redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II.   PLEADING STANDARDS

### A.   Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (*quoting* Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple,

---

dismissal in full on July 31, 2013, as Plaintiff failed to object. (Doc. 26). However, Plaintiff filed his Objections to the Findings and Recommendations (Doc. 28) on August 1, 2013, which are dated July 23, 2013. (Doc. 28 at 20). The Court presumes Plaintiff served his Objections on this date, and thus deems the Objections as timely submitted given that delays in the prison's mail delivery system are not attributable to the Plaintiff.

[2] While the Court finds that Plaintiff states certain cognizable claims, his Objections indicate that he may possess further cognizable claims beyond those presented in his second amended complaint. Thus, the entire complaint is dismissed to afford Plaintiff a **FINAL** opportunity to present a pleading that encompasses the **ENTIRETY** of his cognizable claims. Plaintiff is advised that in future, the Court will consider *only* the factual allegations made in the complaint so he is encouraged to state completely his claims in his Third Amended Complaint or his claims will be dismissed.

concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

**B.     42 U.S.C. § 1983**

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See* Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**III.    COMPLAINT**

Portions of Plaintiff's cause of action arose while he was incarcerated at the California Substance Abuse Treatment Facility and State Prison ("CSATF/SP") located in Corcoran, California, and at the Kern Valley State Prison ("KVSP") located in Delano, California. (Doc. 24 at 12). Plaintiff names the following CSATF/SP personnel as defendants to this matter: (1) Lieutenant ("Lt.") D. Goss, (2) Lt. Gallagher, (3) Officer T. Langler, (4) Physician Assistant ("PA") Byers, (5) Chief Medical Officer Dr. Enemoh, and (6) "O. Beregostva, Medical Doctor" or O. Beregovskaya, M.D. Id. at 1, 9.

3

Plaintiff also names the following KSVP staff as Defendants to this matter: (1) Sergeant ("Sgt.") A. Sotelo and (2) Officer Anderson, the property clerk of the Administrative Segregation ("Ad. Seg.") Unit at KVSP. Id. at 1, 16. Finally, Plaintiff names Defendant Doe, the property clerk of California State Prison – Corcoran ("CSP-Corcoran"). Id. at 16. Plaintiff seeks monetary recompense and states his complaint as follows:

On an undisclosed date, an unnamed officer at CSATF/SP made unwanted sexual advances toward Plaintiff. (Doc. 24 at 3) Plaintiff filed an inmate grievance against the officer. Id. at 3-4. Lt. Goss presided over the administrative hearing on this grievance, at which time he suggested that Plaintiff may have misinterpreted the officer's intentions. Id. Lt. Goss next requested that Plaintiff withdraw his grievance and, when Plaintiff refused, Lt. Goss destroyed Plaintiff's administrative complaint. Id. Also, he threatened future reprisals. Id.

In April 2010, Plaintiff and his cellmate engaged in an altercation, resulting in serious injury to his cellmate. (Doc. 24 at 5) Plaintiff was charged with attempted murder of an inmate and received a Rules Violation Report ("RVR"). Id. On June 14, 2010, Lt. Popper conducted a hearing on the charge and, as a result, ordered an independent investigation of the incident. Id.

On June 19, 2010, Lt. Goss conducted a second hearing on the murder charge without the completion of the independent investigation. (Doc. 24 at 5) Lt. Gallagher, the CSATF/SP Ad. Seg. supervising lieutenant, falsely testified that Plaintiff was unruly at this hearing. Id. at 6. None of the witnesses Plaintiff wished to call to testify at the hearing were made available. Id. Lt. Goss falsely reported that Plaintiff was uncooperative at the hearing and that "Plaintiff acted in concert with an accomplice." Id. Nonetheless, prison personnel subsequently acquitted Plaintiff of this alleged rules violation. Id.

In an unrelated claim, Plaintiff reports that he has deformed lower legs and has been diagnosed with a moderate "case of bowlegs (sic)"and has "flat feet" which requires him use orthopedic shoes and inserts. (Doc. 24 at 7-8) Following the April 24, 2010, altercation with his cellmate, Officer Cribbs confiscated and placed Plaintiff's orthopedic shoes in an evidence locker because they had blood stains on them. Id. at 8. Plaintiff had no other shoes and was forced to walk barefoot to Ad. Seg. Id.

Also on April 24, 2010, Plaintiff sought to access CSATF/SP's law library, as he had a pending writ of habeas corpus that attacked his conviction and was facing attempted murder charges. (Doc. 24 at 13) CSATF/SP officials granted Plaintiff "general library user" status in late May of 2010. Id. at 14. The research materials at the library were over four years old and he was not provided any means to Shepardize his legal materials. Id. at 14-15. Officer Langler subsequently offered to implement an "inmate paging services." Id. at 15. Nevertheless, Plaintiff reports he was banned from the law library due to his inmate grievance against Lt. Goss. Id. at 15.

In June 2010, P.A. Byers met with Plaintiff concerning pain in his lower extremities. (Doc. 24 at 8.) Plaintiff "attempted to talk to P.A. Byers reasonably as well as attempted to have him examine (sic) Plaintiff's feet." Id. at 9. P.A. Byers did not examine Plaintiff's feet, despite the development of "foot ulcers and callouses" from his state-issued shoes and his "severely flat feet" condition. Id. at 8-9. Because Byers found only that Plaintiff had been issued regular shoes, he refused to authorize replacement orthopedic shoes. Id. at 9.

After an appeal, prison officials determined Plaintiff, indeed, had been issued the inserts but they found no record of his having been issued orthopedic shoes. (Doc. 24 at 9) Thus, they permitted Plaintiff to have his orthopedic arch supports restored to him but did not order return of the orthopedic shoes. Id. Instead, medical staff was required to review the shoes and determine whether they were medically necessary. Id.

In April 2010, Lt. Gallagher was in charge of returning the insoles. Id. at 9-10. Gallagher refused to return Plaintiff the orthopedic shoes—despite reviewing the shoes and consulting with medical staff and despite being aware they were needed for the insoles to work. Id. Thus, he determined the shoes were "personal property" which was not permitted in Ad. Seg. Id. at 9. Plaintiff attempted to show Gallagher that the shoes were specially made to accommodate the inserts and told him they would not fit in regular prison shoes. Id. at 10. Gallagher stated he was aware of this and then laughed. Id.

In April 2011, Plaintiff was transferred to KVSP, and by this time he had begun to develop foot calluses and bunions. (Doc. 24 at 11) Plaintiff saw a podiatrist who issued a medical chrono which enabled Plaintiff to wear orthopedic shoes and arch supports. Id. at 11-12.

On March 13, 2013, due to inmate grievances filed against several officers, Sgt. Sotelo and Officer Castro confiscated Plaintiff's orthotics and forced him to walk barefoot to KSVP's "program office holding cell area." Id. at 12.  En route to the program office and while barefoot, Officer Castro stomped on Plaintiff's left foot. Id.  Similarly, Sgt. Sotelo stomped on Plaintiff's right foot and caused damage to his right big toe. Id.  Shortly thereafter, Sgt. Sotelo unleashed a series of foul statements concerning Plaintiff's orthopedic shoes. Id.

## IV.  DISCUSSION AND ANAYLSIS

As a preliminary matter, Plaintiff has not identified any causes of actions against Defendants in his complaint. As a result, Plaintiff has not carried his burden to state claims with specificity. *See* Iqbal, 129 S.Ct. at 1948-49; Bell Atlantic Corp v. Twombly, 550 U.S. 544, 554 (2007) (a plaintiff must set forth more than conclusions and include "the grounds of his entitlement to relief"). Nevertheless, based on the factual allegations above, it appears Plaintiff seeks to proceed on claims for retaliation, denial of access to the courts, inadequate medical care, violation of due process and a new Eighth Amendment claim of cruel and unusual punishment.

### A.  Supervisor Liability

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948–49 (2010). Liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior,* as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); *accord* Starr v. Baca, No. 09–55233, 2011 WL 477094 *4–5 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir.2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir.2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.1997).

Here, Plaintiff indicates that Dr. Beregovskaya and Dr. Enemoh did nothing more than review

Plaintiff's inmate grievance against P.A. Byers. (Doc. 24 at 9). Although Plaintiff names Dr. Beregovskaya for the first time in his current complaint, his sole complaint against Dr. Beregovskaya is based on the handling of Plaintiff's inmate grievance. To that extent, Plaintiff is advised that he has no constitutional right to have his medical grievance reviewed in a particular manner. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Moreover, for the second time, Plaintiff bases his sole complaints against Dr. Enemoh on the theory of *respondeat superior* without providing any factual basis for this claim. (Docs. 18 and 24). Thus, the claim is **DISMISSED**.

### B. First Amendment Claims

#### 1. Retaliation

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (*quoting* Rhodes, 408 F.3d at 567-68). An adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (*quoting* Mendocino Envtl. Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Plaintiff alleges he complained about sexual harassment by a male correctional officer. In this process, Lt. Goss destroyed a complaint made by Plaintiff and discarded it because Plaintiff refused to stop pursuing his sexual harassment complaint. (Doc. 24 at 3-4). Previously, this Court has determined a plaintiff stated a cognizable claim when he alleged a correctional officer destroyed an inmate appeal. Leinweber v. Day, 2010 U.S. Dist. LEXIS 35935, at *9 (E.D. Cal. Mar. 13, 2010).

Similarly, Plaintiff indicates that Lt. Goss, "blinded by anger," also retaliated against Plaintiff by issuing a false finding of guilt on the charge of attempted murder, despite Lt. Popper's order for an independent investigation. (Doc. 24 at 5-6). In Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), the Ninth Circuit determined that a cognizable claim of retaliation existed where a plaintiff alleged that he was

7

falsely accused of prison gang activity in retaliation for filing an inmate grievance. 351 F.3d at 1288-1289. Because "[a]n allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983," Plaintiff has stated a cognizable claim against Lt. Goss. *See* Leinweber, 2010 U.S. Dist. at *9 (*citing* Bruce, 351 F.3d at 1288).[3]

In addition, Plaintiff appears to set forth a claim of retaliation against Officer Langler, when he alleges Langler enforced an unofficial ban that kept Plaintiff from the law library. (Doc. 24 at 15). In support of this contention, Plaintiff alleges that when he confronted Officer Langler about not getting access to the law library, Officer Langler told him that Plaintiff "knew damn well why [he] was restricted from the library like [he was] showing up the Lieutenant like that." Id. It appears that Officer Langler prohibited Plaintiff from accessing the law library because Plaintiff filed a grievance against Lt. Goss. Id. Such an action could reasonably have a chilling effect on a litigant's exercise of their First Amendment rights. White, 227 F.3d at 1228. Thus, taking the complaint in the light most favorable to the Plaintiff, Plaintiff states a cognizable claim against Officer Langler.

2. **Access to the Courts**

Plaintiff asserts a multifaceted First Amendment claim of denial of access to the courts against Officer Langler, Officer Anderson, and Defendant Doe – the Property Clerk at CSP-Corcoran. (Doc. 24 at 13-19). Under the First Amendment, prisoners have a right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).

In addition to demonstrating official acts frustrating the inmate's litigation, a prisoner asserting a backward-looking denial of access claim must show the loss of a "nonfrivolous" or "arguable" underlying claim. *See* Christopher v. Harbury, 536 U.S. 403, 413-414 (2002). The underlying claim must be set forth in the pleading claiming a denial of access to the courts "as if it were being

---

[3] Plaintiff also avers that Officer Anderson's actions were "in concert with established patterns of retaliation by prison officials" without providing any factual support for this conclusion. Thus, the claim is **DISMISSED.**

independently pursued." Id. at 417.  Finally, the plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 415.

A plaintiff must allege "actual injury" as the threshold requirement to any First Amendment claim of denial of access to the Courts. *See* Lewis, 518 U.S. at 351-53.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. The failure to demonstrate an actual injury is jurisdictional. Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a "nonfrivolous legal claim had been frustrated" is fatal").  As discussed below, Plaintiff fails to state a claim of denial of access to the courts.

        a.      <u>Plaintiff has not stated a claim against Officer Langler</u>.

Plaintiff alleges he was injured when he was denied priority legal user status, when he had to "wrangle" with Officer Langler to get his legal property, and that the law library possessed subpar legal resources. (Doc. 24 at 14).

Notably, inmates do *not* have a "freestanding right" to access a law library or legal assistance. Lewis v. Casey, 518 U.S. 343, 351 (1996). The accessibility or adequacy of a law library is of constitutional concern only when it thwarts a prisoner from exercising his right to access the courts for the purpose of seeking redress for "claimed violations of fundamental constitutional rights." Id. (*quoting* Bounds v. Smith, 430 U.S. 817, 825 (1977)). Moreover, an inmate must demonstrate that he suffered "actual injury" because of deficiencies in law library access or materials, "such as the inability to meet a filing deadline or to present a claim" in a direct appeal, habeas petition, or a § 1983 action. Lewis, 518 U.S. at 348, 355.  As the United States Supreme Court has explained:

> [A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.

Id. at 351.

The age of the law library reference materials and the fact that it offered no method to Shepardize cases indicates nothing more than Plaintiff's assertion that the law library was subpar.

Though he complains he submitted a habeas corpus petition to the California court of appeals "without any research into any of the rebuttals," he does not allege any facts that he was prejudiced by doing so. Lewis, 518 U.S. at 351-53. Furthermore in his second amended complaint, Plaintiff notes that Officer Langler permitted Plaintiff to access the law library only once, he fails to indicate how this restriction caused him an actual injury.

On the other hand, for the first time in his Objections, Plaintiff asserts facts that could support a claim against Officer Langler. Specifically, Plaintiff avers that "by failing to schedule the [P]laintiff in a timely fashion for the use of [the law library]…cost the [P]laintiff the opportunity to challenge an adverse entry of judgment [on a habeas corpus appeal]." (Doc. 28 at 5). Notably, this conclusory allegation is insufficient to state a claim against Langler but it raises the *possibility* Plaintiff may be able to state a claim.

The Court does not understand why Plaintiff omitted these determinative facts from his prior complaints. Nonetheless, given the facts alleged in his Objections, Plaintiff may be able to state a First Amendment claim for denial of access to the courts against Officer Langler. Therefore, the Court **DISMISSES** this claim and with leave to amend.

b. <u>Plaintiff fails to state a claim against Defendant Doe.</u>

Plaintiff alleges he was injured by Defendant Doe, the property clerk of CSP-Corcoran's SHU facility, when Doe denied him access to his legal property. (Doc. 24 at 16). Plaintiff claims he sought to access the documents for the purposes of filing a "writ of habeas corpus to overturn his RVR hearing, a state bar complaint, and a writ of habeas corpus before the California Supreme Court." Id. While awaiting receipt of this property may have presented an inconvenience to Plaintiff, it does not present any cognizable injury under § 1983. In fact, Plaintiff's admission that he "filed the appropriate appeals…within the Superior Court of California," demonstrates he cannot state a claim. Id. Thus, the Court **DISMISSES** this claim.

C. **<u>Eighth Amendment – Failure to Provide Adequate Medical Care</u>**

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (*quoting* Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1976)). The prohibition of cruel and unusual punishment requires

that prison officials to provide medical care to prisoners. Id. at 104-05. To state a claim arising in the context of inadequate medical care, a plaintiff must point to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Thus, a cognizable claim has two elements: "the seriousness of the prisoner's medical need and the nature of defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

Plaintiff alleges he suffers from a congenital defect of his feet in which he has no arch in either foot. (Doc. 24 at 7) Plaintiff alleges this condition is "quite painful to say the least" if not treated. Id. For many years before entering prison and while in prison, he used orthopedic devices. Id. When he entered prison he had the devices in prison and used them faithfully. Id. Eventually, Plaintiff was provided a new pair of orthopedic shoes and "custom-made arch supports and insoles for athletic shoes as well." Id. at 7-8. When he was transferred to Kern Valley State Prison in April 2011, he was seen by a podiatrist who issued him new orthopedic boots. Id. at 11.

Likewise, he alleges that after his arch supports and orthopedic shoes were removed from him and he was forced to wear non-orthopedic shoes, he developed foot ulcers, callouses and bunions and was required to see a podiatrist regularly for months. Id. at 8, 11. Thus, at this early stage in the proceeding, the Court finds these allegations sufficient to demonstrate Plaintiff suffered from a serious medical condition. Coleman v. Wilson, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995).

With regard to P.A. Byers, Plaintiff asserts Byers failed to examine him and refused to prescribe orthopedic shoes. (Doc. 24 at 8-9, 11). Plaintiff explains that he "attempted to talk to PA Byers reasonably as well as attempted to have him examine [his] feet." Id. at 9. PA Byers refused to examine Plaintiff and indicated that the state budget did not allow for orthopedic shoes. Id. It was not until Plaintiff's transfer to KVSP that Plaintiff was examined by a podiatrist who prescribed him a pair of orthopedic shoes. Given Byers' cursory response to Plaintiff's serious medical need, the Court finds that Plaintiff states a cognizable Eighth Amendment claim of failure to provide adequate medical care at this early juncture.

With regard to Lt. Gallagher, Plaintiff indicates he made Lt. Gallagher aware of his need for the orthopedic shoes and the arch supports by demonstrating that the arch supports could not fit into

prison-issued shoes. (Doc. 24 at 9-10)  Gallagher acknowledged understanding that Plaintiff needed the shoes but refused to allow Plaintiff to have them.  Id.  Notably, Plaintiff alleges the appeal required medical staff to review the shoes and determine whether they were for a medical need.  Id.  However, Gallagher looked at the shoes and consulted with medical staff but informed medical staff that the shoes were personal property and would not be allowed in Ad Seg. Id. at 9-10. Taken in a light most favorable to Plaintiff, Plaintiff states a cognizable claim against Lt. Gallagher.

### D.      **Procedural Due process and Disciplinary Hearings**.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  A plaintiff alleging a procedural due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then demonstrate that the procedures attendant upon the deprivation were not constitutionally sufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989).  McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).  The Due Process Clause in of itself protects only those interests that are implicit in the word "liberty." *See, e.g.*, Vitek v. Jones, 445 U.S. 480, 493 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to a mental institution).  A state statute or regulation, however, gives rise to a protected liberty interest if it imposes conditions of confinement that constitute an "atypical and significant hardship [on the prisoner] in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  This requires a factual comparison between the conditions of confinement caused by the challenged action and the basic conditions of prison life.  See Wilkinson, 545 U.S. at 223-24 (placement of prisoners in a highly restrictive "supermax" prison implicated a protected liberty interest).

Here, Plaintiff fails to state a procedural due process claim in his second amended against Lt. Goss and Lt. Gallagher because there are no facts alleged that he was deprived of any liberty interest as a result of the June 14, 2010, disciplinary hearing.   Plaintiff's acquittal of the RVR report and the lack of discipline received as a result of the false report moots Plaintiff's claim that Lt. Goss created a false report and failed to make his witnesses available at the hearing.  Similarly, while Plaintiff claims that Lt. Gallagher falsely testified against Plaintiff, the Due Process clause does not guarantee freedom

1 from false testimony. *See e.g.*, Kennedy v. Hayes, 1:09-CV-01946-JLT, 2010 WL 5440805 (E.D. Cal.
2 Dec. 28, 2010).

3 In addition, Plaintiff indicates that Goss denied Plaintiff's request to present witnesses by not
4 making them available at the June 14, 2010, disciplinary hearing. (Doc. 24 at 6). The Ninth Circuit
5 has determined that prisoners do not possess an unlimited right to call witnesses at a disciplinary
6 hearing. Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003). However, prison officials are
7 required to "make the decision whether to allow witnesses on a case-by-case basis, examining the
8 potential hazards that may result from calling a particular person." Serrano, 345 F.3d at 1079. It
9 logically follows that a blanket denial of an inmate's right to call witnesses at a disciplinary hearing
10 implicates an inmates' due process rights. *See* Id. Examining the claim in the light most favorable to
11 the Plaintiff, Lt. Goss seemingly refused to permit Plaintiff to present his witnesses at trial without
12 providing any explanation.

13 In his second amended complaint, Plaintiff fails to demonstrate that any deprivation of
14 Plaintiff's liberty occurred. Namely, Plaintiff's RVR that resulted from Lt. Goss' conduct was
15 overturned on appeal. (Doc. 24 at 6-7). However, for the first time in his Objections, Plaintiff states
16 that the CDCR-115-RVR "was reheard on September 18[,] 2010 with a finding of guilty for a lesser
17 (sic) included offense of [b]attery." (Doc. 28 at 17). As a result, Plaintiff received a 15 month
18 segregated housing unit term and 360-day loss of good credit. Id. at 17. Allegations of a loss of good
19 time credit demonstrate a deprivation of a liberty interest. Wolff, 418 U.S. at 556. Thus, the Court
20 **DISMISSES** the claims with leave to amend.

21       **E.**    **Fed. R. Civ. P. 18(a) does not permit "buckshot complaints."**

22 Despite the prior admonition that Plaintiff may not file a "buckshot complaint," (Docs. 14),
23 Plaintiff has added new, unrelated claims against Sgt. Soltero, Officer Castro and Anderson. Fed. R.
24 Civ. P. 18(a) permits a plaintiff to join as many claims as he has against a single party. However,
25 "[u]nrelated claims against different defendants belong in different suits." Smith v. Anti, Case No.
26 2:07-CV-1675-GEBGGHP, 2008 WL 5178911 * 1 (E.D. Cal. 2008)(*quoting* George v. Smith, et al.,
27 507 F.3d 605, 607 (7th Cir. 2007)). A "buckshot complaint" occurs where a plaintiff files unrelated
28 claims against different defendants in the same suit. *See* Smith, 2008 WL at 1. "Buckshot complaints"

violate Fed. R. Civ. P. 18(a).  Plaintiff has filed a buckshot complaint against the following individuals:

                    i.   <u>Officer Anderson</u>

For the first time in his second amended complaint, Plaintiff claims Officer Anderson denied him his legal property which resulted in "adverse rulings in various court proceedings." (Doc. 24 at 17).  Plaintiff does not allege facts in his second amended complaint that these "various court proceedings" were non-frivolous nor does he indicate the bases of his claims.  He does not aver that he sought to access his legal documents during the pleading stage of either his habeas corpus matters or that his petition for writ of mandate related to his underlying conviction or a condition of confinement.

Finally, and determinative of the Court's decision, these allegations occurred *after* the filing of the complaint.[4]  Plaintiff cannot bootstrap his First Amendment claim against Officer Anderson onto his current lawsuit.  Furthermore, Plaintiff provides no factual support to demonstrate that Officer Anderson's actions are part of a common factual nexus with his other claims.[5]  Thus, his claim against Officer Anderson is a buckshot complaint.  Therefore, the claim is **DISMISSED.**

                    ii.   <u>Sgt. Soltero and Officer Castillo</u>

While the Court sympathizes with Plaintiff's situation, Plaintiff's apparent Eighth Amendment claim of cruel and unusual punishment concerning Sgt. Soltero and Officer Castro is wholly unrelated to Plaintiff original and first amended complaints. *Compare* (Docs. 1 and 18) *with* (Doc. 24).  These actions allegedly occurred on March 13, 2013. (Doc. 18 at 13).  However, Plaintiff provides no factual support to demonstrate that these actions, which occurred two years *after* Plaintiff filed his complaint, are related to the actions of prison personnel in 2010.  Thus, Plaintiff's complaint against Sgt. Soltero and Officer Castro is a "buckshot complaint" that violates Fed. R. Civ. P. 18(a).

Finally, when the Court previously granted him leave to amend, the Court did not provide Plaintiff with *carte blanche* leave to include <u>every</u> claim against every prison official that he might have.  Should new claims arise during the course of this litigation, Plaintiff must initiate separate

---

[4] Plaintiff alleges that some of his claim against Officer Anderson arose in September of 2011.
[5] In his second amended complaint, Plaintiff alleges that Officer Anderson's actions were "in concert with established patters of retaliation by prison officials." (Doc. 24 at 19).  Nowhere does Plaintiff provide factual allegations to support this contention.  Thus, no factual nexus exists to permit Plaintiff to bring this claim in the present lawsuit.

1 lawsuits. Therefore, the Court **DISMISSES** Plaintiff's claims against Sgt. Soltero and Officer Castro.[6]

### V.   FINAL LEAVE TO AMEND

The Court will provide Plaintiff a **final** opportunity to amend his pleading to cure the deficiencies noted in this order. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted). In his first amended complaint, **Plaintiff must address the deficiencies noted here. Plaintiff is advised that his failure to do so will result in a recommendation of dismissal of this action.**

Plaintiff is explicitly warned to include **all facts** which are the basis of his claim in his third amended complaint. **Facts raised in subsequent pleadings to his third amended complaint will not be considered by the Court**. Further, Plaintiff must state his complaint in a plain and concise manner. Plaintiff's third amended complaint **SHALL NOT EXCEED 20 pages.  Failure to comply with this order will result in an immediate recommendation of dismissal without leave to amend**.

In addition, Plaintiff is cautioned that in his third amended complaint he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff is also advised that once he files his third amended complaint, his original pleadings are superceded and no longer serve any function in the case. *See* Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Thus, the third amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not [re-]alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted). **Plaintiff may not assert any claims unrelated to those asserted in his original and first amended complaints.**

///

---

[6]In filing his third amended complaint, Plaintiff is **STRONGLY ADVISED** not to re-assert his claims against Officer Anderson, Sgt. Solteo or Officer Castro.  Rather, the Court **STRONGLY ENCOURAGES** Plaintiff to file a separate lawsuit in regard to these claims if he wishes to pursue these claims.

**ORDER**

For the reasons stated above, the Court **HEREBY ORDERS** that:

1. The second complaint (Doc. 24) is **DISMISSED;**

2. Plaintiff is **GRANTED 21 days** from the date of service of this Order to file a third amended complaint that addresses the deficiencies set forth in this order. The third amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint." **The third amended complaint SHALL not exceed 20 pages**;

3. The Clerk of the Court is **DIRECTED** to send Plaintiff the form complaint for use in a civil rights action; and

4. **Plaintiff is firmly cautioned that failure to comply with this order will result in an order dismissing this action.**

IT IS SO ORDERED.

Dated:   **August 6, 2013**                    /s/ Jennifer L. Thurston
                                                              UNITED STATES MAGISTRATE JUDGE