UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>D. GOSS, et al.,<br><br>    Defendants. | Case No.: 1:10-cv-01814 - LJO- JLT (PC)<br><br>**ORDER FINDING SERVICE OF CERTAIN CLAIMS APPROPRIATE AND DIRECTING THE CLERK OF THE COURT TO PROVIDE PLAINTIFF WITH SERVICE DOCUMENTS**<br>(Doc. 31)<br><br>**FINDING AND RECOMMENDATION DISMISSING CERTAIN CLAIMS**<br>(Doc. 31) |

Plaintiff Lawrence Christopher Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff timely submits his third amended complaint. (Doc. 31). As required by 28 U.S.C. § 1915A, the Court presently screens and the Complaint, and, for the reasons set forth below finds that Plaintiff states certain cognizable claims. The Court **RECOMMENDS** that the remaining claims be **DISMISSED.**

**I.    SCREENING REQUIREMENT**

Because Plaintiff seeks redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary

1

relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. PLEADING STANDARDS

### A. Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (*quoting* Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

### B. 42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See* Crumpton v.

Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### III. FACTUAL ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

On an undisclosed date, an unnamed male correctional officer at California Substance Abuse Treatment Facility and State Prison ("Corcoran") in Corcoran, California, made unsolicited sexual advances toward Plaintiff. (Doc. 31 at 3). Plaintiff subsequently filed an inmate grievance against the deviant officer and was initially interviewed by Lieutenant ("Lt.") Goss about this complaint. Id. During a second interview, Lt. Goss requested that Plaintiff drop his complaint. Id. at 3-4. When Plaintiff refused to withdraw his complaint, Lt. Goss destroyed Plaintiff's administrative grievance form and threatened further reprisal. Id. at 4.

On April 24, 2010, Plaintiff and his cellmate became involved in an altercation, in which his cellmate became seriously injured. (Doc. 31 at 4). Officer Cribbs then confiscated Plaintiff's medically authorized orthotics as evidence because blood stains were found on his shoes after the altercation. Id. at 7. Plaintiff suffers from a "very debilitating congenital defect of his feet" and walking is very painful without his orthotics because he lacks arches in either foot. Id. at 8.

Shortly after the April 24, 2010 altercation, Plaintiff filed an inmate medical grievance concerning the confiscation of his orthotics. (Doc. 31 at 8). Physician Assistant ("PA") Byers initially met with Plaintiff concerning his medical grievance. Id. at 9. Plaintiff avers that he began to develop "foot ulcers, bunions, and callouses" from wearing ill-fitting shoes. Id. at 8. Plaintiff avers that PA Byers refused to examine Plaintiff, despite Plaintiff's "attempt [] to reasonably talk with P.A. Byers concerning the need for orthotics." Id. at 9.

As a result of the April 24, 2010 altercation, prison personnel placed Plaintiff in the Administrative Segregation Unit ("Ad. Seg."), where he received a CDCR Rules Violation Report, Form 115 ("RVR-115") violation report. (Doc. 31 at 4). Three days after placement in Ag. Seg., Plaintiff received an order from the California Court of Appeals denying his habeas corpus claim. Id.

at 10.

On April 28, 2010, Plaintiff requested that Officer Langler place him on priority library user ("PLU") status in order to address the denial of his habeas claim within the 15-day deadline permitted by California law. Id. at 10. Officer Langler granted Plaintiff's request in full on May 5, 2013, but he did not receive his legal property until a week later. Id. at 11. It appears that Plaintiff did not actually access the law library until May 15, 2013. Id. at 10.

During the hearing on the RVR hearing, which seemingly occurred on June 14, 2010, Plaintiff presented exculpatory evidence to Lt. Popper, who acted as the senior hearing officer. Id. Lt. Popper terminated the initial hearing and ordered an independent investigation of the incident. Id.

On June 19, 2010, Lt. Goss held an impromptu hearing on Plaintiff's RVR-115 charge. (Doc. 31 at 4). Lt. Goss excluded Plaintiff's witnesses and later dismissed Plaintiff from the hearing for "attempting to speak up and declare due process rights." Id. at 5. Lt. Gallagher falsely testified concerning the June 14, 2010, hearing. Id. at 7. Lt. Goss issued an RVR-115 finding of an accessory to attempted murder by another inmate. Id. at 5.

On August 19, 2010, Corcoran's Warden vacated Lt. Goss's RVR. (Doc. 31 at 5). On September 22, 2010, Lt. Oehlert held a second hearing on Plaintiff's RVR-115 charge arising from the altercation with his cellmate. Id. The independent report was used during this proceeding, and prison personnel found Plaintiff guilty of battery causing serious bodily injury. Id. at 5.

Later, on an undisclosed date, Officer Langler banned Plaintiff from the law library. (Doc. 31 at 11). Plaintiff confronted Officer Langler about the denial of access. Id. at 11. Officer Langler replied, "Smith[,] you know damn well why you can't come to my library[,] showing up my Lieutenant like that with that appeal." Id. at 11.

Also in August of 2010, medical personnel ordered the release of Plaintiff's medical shoes to him. (Doc. 31 at 8). However, Lt. Gallagher refused to release Plaintiff's shoes to him. Id. at 8. Plaintiff informed Lt. Gallagher that his arch supports would only work with Plaintiff's special orthopedic shoes. Id. Lt. Gallagher responded that his orthopedic shoes were not permitted in the Ad.

1 | Seg. Id. at 8.[1]

## IV.   DISCUSSION AND ANAYLSIS

### A.  First Amendment Claims

#### 1.   Retaliation

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (*quoting* Rhodes, 408 F.3d at 567-68). An adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (*quoting* Mendocino Envtl. Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

a.   Lt. Goss

Plaintiff alleges he complained about sexual harassment by a male correctional officer to Lt. Goss. In this process, Lt. Goss destroyed a complaint made by Plaintiff and discarded it because Plaintiff refused to stop pursuing his sexual harassment complaint. (Doc. 31 at 4). Previously, this Court has determined a plaintiff stated a cognizable claim when he alleged a correctional officer destroyed an inmate appeal. Leinweber v. Day, 2010 U.S. Dist. LEXIS 35935, at *9 (E.D. Cal. Mar. 13, 2010).

Similarly, Plaintiff indicates that Lt. Goss, "blinded by anger," also retaliated against Plaintiff by issuing a false finding of guilt on the charge of attempted murder, despite Lt. Popper's order for an independent investigation. (Doc. 31 at 4-5). In Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), the Ninth Circuit determined that a cognizable claim of retaliation existed where a plaintiff alleged that he was

---

[1] In addition to these factual allegations, Plaintiff raises claims which occurred after Plaintiff filed his initial complaint. Given that Plaintiff has been advised on numerous occasions that he cannot submit buckshot complaints when amending his claim, the Court declines to summarize Plaintiff's buckshot allegations. These claims are recommended to be **DISMISSED without prejudice.** If Plaintiff wishes to pursue these new claims, he may file a separate action.

falsely accused of prison gang activity in retaliation for filing an inmate grievance. 351 F.3d at 1288-1289.

Furthermore, Plaintiff has demonstrated that Lt. Goss' finding of guilt was reversed by the Warden, and thus his claim is not barred by Heck v. Humphrey, 512 U.S. 477 (1994) (holding that a suit for damages on a civil rights claim concerning an allegedly unconstitutional conviction or imprisonment cannot be maintained unless the plaintiff can demonstrate that a conviction has been set aside or otherwise declared invalid). Because "[a]n allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983," Plaintiff has stated a cognizable claim against Lt. Goss. *See* Leinweber, 2010 U.S. Dist. at *9 (*citing* Bruce, 351 F.3d at 1288).[2]

b.  Officer Langler

Plaintiff appears to set forth a claim of retaliation against Officer Langler, when he alleges Officer Langler enforced an unofficial ban that kept Plaintiff from the law library. (Doc. 31 at 11). In support of this contention, Plaintiff alleges that when he confronted Officer Langler about not getting access to the law library, Officer Langler told him that Plaintiff "knew damn well why you can't come to my library showing up [Goss] like that with that appeal." Id. It appears that Officer Langler prohibited Plaintiff from accessing the law library because Plaintiff appealed his June 19, 2010 RVR-115 conviction. Id. Such an action could reasonably have a chilling effect on a litigant's exercise of their First Amendment rights. White, 227 F.3d at 1228. Thus, taking the complaint in the light most favorable to the Plaintiff, Plaintiff states a cognizable claim against Officer Langler.

c.  Defendant Doe

For the first time in this third amended complaint, Plaintiff alleges that Defendant Doe withheld Plaintiff's legal property in retaliation for Plaintiff's complaint about the unnamed officer's sexual advances. (Doc. 31 at 13). Specifically, Defendant Doe allegedly told Plaintiff that he did not "condone homophobic behavior towards colleagues[;] everyone needs love," and thus somehow

---

[2] Plaintiff again avers that Officer Anderson's and Defendant Doe's actions acted within a retaliatory nexus influenced by Lt. Goss and Officer Langler. However, as discussed below, Plaintiff fails to state any claim against these individuals. Thus, the claim is **DISMISSED.**

retaliated against the Plaintiff. Id. at 13.  It thus appears that the Plaintiff believes Defendant Doe retaliated against him for complaining about the sexual advances of Defendant Doe's colleague rather for the mere fact of filing an inmate grievance.  Such a claim is more akin to a claim of retaliation for refusing sexual advances in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e. While the Ninth Circuit recognizes that inmates have a right to be free from sexual harassment, (Schwenk v. Hartford, 204 F.3d 1187 (9th 2000)), Plaintiff does not allege the Defendant Doe sexually harassed him. *See* (Doc. 31).

On the other hand, Plaintiff previously omitted this key fact from his original, first, and second complaints and from his objections to the Magistrate Judge's Findings and Recommendations. (Docs. 1, 18, 24, and 28).  Given the fluidity of Plaintiff's claim against this individual, Plaintiff seemingly now believes he can assert a claim against Defendant Doe by merely assigning some retaliatory comment to him.  In determining plausibility, the Court is permitted to use its common sense, and, in doing so, the Court finds Plaintiff's new allegation against Defendant Doe wholly unconvincing. Iqbal, 556 U.S. at 679.

Furthermore, as he previously alleged, Plaintiff claims that he was injured by Defendant Doe when Doe denied him access to his legal property. (Doc. 31 at 12-13).  Plaintiff claims that Defendant Doe's delay caused the California Supreme Court to deny Plaintiff's habeas corpus claim because of a procedural bar. Id.  However, Plaintiff explains that he could have easily shown that he was exempt from this procedural bar due to inept appellate counsel. Id. at 12-13.  Nevertheless, a review of the record indicates that Plaintiff represented himself during his habeas corpus proceedings, and thus his reference to his inept appellate counsel with reference to his habeas proceedings is unavailing.[3]

While awaiting receipt of this property may have presented an inconvenience to Plaintiff, it does not present any cognizable injury under § 1983.  In fact, Plaintiff's admission that he filed an appeal – although allegedly inadequate – with the California Supreme Court demonstrates he cannot

---

[3] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b); United States v. Bernal–Obeso, 989 F.2d 331, 333 (9th Cir.1993). The record of court proceedings is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n. 9 (9th Cir.1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir.1980).

state a claim. Thus, Plaintiff fails to state a claim against Defendant Doe. Therefore, the Court recommends that Plaintiff's claim against Defendant Doe be **DISMISSED.**

    2. **Access to the Courts**

Plaintiff again asserts a multifaceted First Amendment claim of denial of access to the courts against Officer Langler and Officer Anderson. (Doc. 31 at 11-16). Under the First Amendment, prisoners have a right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).

In addition to demonstrating official acts frustrating the inmate's litigation, a prisoner asserting a backward-looking denial of access claim must show the loss of a "nonfrivolous" or "arguable" underlying claim. *See* Christopher v. Harbury, 536 U.S. 403, 413-414 (2002). The underlying claim must be set forth in the pleading claiming a denial of access to the courts "as if it were being independently pursued." Id. at 417. Finally, the plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 415.

A plaintiff must allege "actual injury" as the threshold requirement to any First Amendment claim of denial of access to the Courts. *See* Lewis, 518 U.S. at 351-53. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. The failure to demonstrate an actual injury is jurisdictional. Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a "nonfrivolous legal claim had been frustrated" is fatal"). As discussed below, Plaintiff fails to state a claim of denial of access to the courts.

        a. Officer Langler.

Plaintiff alleges he was injured when he was denied PLU status, when he had to "wrangle" with Officer Langler to get his legal property, and that the law library possessed subpar legal resources. (Doc. 31 at 14). As previously advised, inmates do *not* have a "freestanding right" to

8

access a law library or legal assistance. Lewis v. Casey, 518 U.S. 343, 351 (1996). The accessibility or adequacy of a law library is of constitutional concern only when it thwarts a prisoner from exercising his right to access the courts for the purpose of seeking redress for "claimed violations of fundamental constitutional rights." Id. (*quoting* Bounds v. Smith, 430 U.S. 817, 825 (1977)).

Moreover, an inmate must demonstrate that he suffered "actual injury" because of deficiencies in law library access or materials, "such as the inability to meet a filing deadline or to present a claim" in a direct appeal, habeas petition, or a § 1983 action. Lewis, 518 U.S. at 348, 355. As the United States Supreme Court has explained:

> [A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.

Id. at 351.

Plaintiff avers that Officer Langler failed to provide him PLU status, which resulted in a denial of his habeas corpus claim for his conviction. (Doc. 31 at 10). Plaintiff notes that the 4th District Court of Appeals for the State of California ("4th DCS") denied his habeas claim on April 27, 2010, because Plaintiff failed to meet the standard set forth in People v. Duvall, 9 Cal. 4th 464, 886 P.2d 1252 (1995). Id. Namely, Plaintiff failed to set forth an adequate factual basis for his claim. Id. Thus, Plaintiff seemingly argues that he could have easily ameliorated this error had he been provided adequate access to the law library. Id.

Contrary to Plaintiff's argument, however, Plaintiff was well aware of the legal standard set forth in Duval prior to April 27, 2010. A review of Plaintiff's habeas corpus claim indicates that on July 8, 2009, the California Superior Court of San Diego County denied Plaintiff's initial petition for writ of habeas corpus in the matter of In re. Lawrence Smith, Case No. HC 19620, SCD 186917, and SCD 187273, Order dated July 8, 2009. *See* Smith v. Biter, Case No. 3:11-cv-1003-JLS-PCL, Doc. 1-1, (C.D. Cal. March 12, 2012). The San Diego Superior Court specifically advised that:

> "Moreover, in People v. Duvall (1995) 9 Cal.4th 464, the Court said: "[t]the petitioner bears a heavy burden initially to plead sufficient grounds for relief, and then later to prove them…¶ To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and "[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists." ([Penal Code] § 1474, subd.

2.) The petition should both (i) state fully and with particularity the facts on which relief is sought (People v. Karis (1988) 46 Cal.3d 612, 656; In re. Swain (1949) 34 Cal.2d 300, 304), as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including the pertinent portions of trial transcripts and affidavits or declarations. (Citations). '*Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing*.' (Karis, supra, at p. 656.)"

Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 2-3 (emphasis added) (quotations and citations in original).

Rather than appeal the decision of the San Diego Superior Court to the 4th DCA, Plaintiff seemingly filed a second petition for a writ of habeas corpus in the matter of In re Lawrence Smith, Case No. HC 19620, SCD 186917, and SCD 187273. *See* Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 8-10. The San Diego Superior Court noted that Plaintiff "provide[d] proof that he received [the] July 8, 2009 Order because he [had] filed a copy of it as an exhibit to" his second petition. Id. at 8. The Court admonished Plaintiff because he chose to "ignore everything that was stated in the July 8, 2009" order and he chose to file a "word-for-word repeat of [the original] Petition as if the Court had never spent the time to prepare [the July 8, 2009] original denial." Id. at 8.

The argument that Officer Langler's delay in providing Plaintiff with PLU status and his legal documents after April 27, 2010 prevented Plaintiff from researching the legal standard required to state his California habeas claim is specious. Clearly, as indicated above, due to the explicit instruction in the order issued by the San Diego Superior Court, Plaintiff was well aware of the standard required by Duvall. Given that Duvall required Plaintiff merely to state sufficient *factual* allegations, this was within his first-hand knowledge *prior* to April 27, 2010, and no amount of legal research could provide sufficient factual support for his claims. Furthermore, and determinative of the Court's decision, Plaintiff does not aver that Officer Langler denied him access to the law library at the time he submitted his petition to the Superior Court or to the 4th DCA. Thus, Plaintiff fails to causally link Officer Langler's actions to *Plaintiff's failure* to submit a habeas petition that conformed with the Duval standard.

Next, the Court finds Plaintiff's argument that Officer Langler's refusal to grant PLU status somehow caused Plaintiff to submit an "exact replica of the Plaintiff's writ to the Court of Appeals" to the California Supreme Court wholly unconvincing. (Doc. 31 at 11). In its July 8, 2009 Order, the San Diego Superior court explicitly advised Plaintiff of the legal standards needed to state his substantive

habeas claim. *See* Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 4-5. Thus, the San Diego Superior Court provided Plaintiff the legal tools needed to restate his habeas appeal. Yet, for unknown reasons, Plaintiff elected to submit an exact replica of his original habeas petition without regard for the explicit instruction. *See* Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 8. Thus, the notion that Plaintiff somehow needed to access the law library to inform himself of the legal standards *of which he was already aware* in order to file an appeal to the California Supreme Court lacks merit.

Finally, Plaintiff's complaint against Officer Langler for the "woefully inadequate law library" is nothing more than an assertion that the law library was subpar. (Doc. 31 at 11). As indicated above, the San Diego Superior Court previously advised Plaintiff at length of the standards needed to assert a cognizable petition for writ of habeas corpus. As such, there is no indication that the law library at Corcoran somehow caused prejudiced the Plaintiff. Thus, the Court finds that Plaintiff failed to state a cognizable claim of access to the law library against Officer Langler. Therefore, the Court recommends **DISMISSAL** of this claim against Officer Langler.

b. Officer Anderson

Despite the prior admonitions that Plaintiff may not file a "buckshot complaint," Plaintiff continues to maintain his claims Defendant Doe[4] and Anderson. Fed. R. Civ. P. 18(a) permits a plaintiff to join as many claims as he has against a single party. However, "[u]nrelated claims against different defendants belong in different suits." Smith v. Anti, Case No. 2:07-CV-1675-GEBGGHP, 2008 WL 5178911 * 1 (E.D. Cal. 2008)(*quoting* George v. Smith, et al., 507 F.3d 605, 607 (7th Cir. 2007)). A "buckshot complaint" occurs where a plaintiff files unrelated claims against different defendants in the same suit. *See* Smith, 2008 WL at 1. "Buckshot complaints" violate Fed. R. Civ. P. 18(a).

Plaintiff again claims Officer Anderson denied him his legal property and access to the Court. (Doc. 31 at 13-15). Plaintiff now alleges that Officer Anderson confiscated Plaintiff's legal property on October 4, 2011. (Doc. 31 at 14). However, Plaintiff indicates that the Court granted him an extension of time up to December 31, 2011, to file a response to the motion to dismiss in his habeas

---

[4] As the Court adequately addresses the substantive merits of Plaintiff's claim against Defendant Doe above, it need not address the procedural merits of his claim against Defendant Doe.

corpus matter. Id. The United States District Court for the Southern District of California subsequently provided him with a copy of the pleadings, but Plaintiff complains that due to "the holiday season and staff shortages" he could not access KVSP's law library in time to file a proper appeal. Id. at 14. Thus, Plaintiff sustained no apparent injury due to Officer Anderson's actions. Rather, it was the intervening fact of the holiday and personnel shortages that allegedly detained Plaintiff from filing a proper brief.

Moreover, even if Plaintiff were able to demonstrate that Sgt. Anderson caused Plaintiff injury, Plaintiff cannot show loss of a nonfrivolous claim with regard to his habeas corpus claim in Case No. Case 3:11-cv-01003-JLS-PCL. A review of the Court's order dismissing Plaintiff's habeas corpus petition indicates that *Plaintiff's* delay in filing his habeas corpus petition in federal court approximately 558 days after his conviction merited dismissal of his habeas corpus claim. Smith, Case No. 3:11-cv-1003, Doc. 24. The Court rejected Plaintiff's argument that the trial court's delay in providing him free copies of his pleadings constituted a state-created impediment and thus entitled him to a tolling of the statute of limitations. Id. at 4. Finally, the Court found that the 6-month delay between Plaintiff's successive habeas petitions filed with the San Diego Superior Court was unreasonable. Id. Thus it appears that Plaintiff possessed no meritorious habeas corpus claim in Case 3:11-cv-01003-JLS-PCL.

Finally, and determinative of the Court's decision, these allegations occurred *after* the filing of the complaint.[5] Plaintiff cannot bootstrap his First Amendment claim against Officer Anderson into his current lawsuit. Furthermore, Plaintiff provides no factual support to demonstrate that Officer Anderson's actions are part of a common factual nexus with his other claims.[6] Thus, his claim against Officer Anderson is a buckshot complaint and is recommended to be **DISMISSED.**

C. **Eighth Amendment – Failure to Provide Adequate Medical Care**

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized

---

[5] Plaintiff alleges that some of his claim against Officer Anderson arose in October of 2011.

[6] Plaintiff for the first time in his third amended complaint alleges that Gallagher confiscated Plaintiff's shoes in retaliation for appealing the June 19, 2010, charge. The fact Plaintiff has plead this action many times before now—under penalty of perjury—and has never made this allegation smacks of gamesmanship and casts significant doubt on Plaintiff's veracity. The Court refuses to be party to what is clearly dishonest pleading. As such, the Court **RECOMMENDS** that this claim be **DISMISSED.**

12

1  standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (*quoting* Jackson v.
2  Bishop, 404 F.2d 571, 579 (8th Cir. 1976)).  The prohibition of cruel and unusual punishment requires
3  that prison officials to provide medical care to prisoners. Id. at 104-05.  To state a claim arising in the
4  context of inadequate medical care, a plaintiff must point to "acts or omissions sufficiently harmful to
5  evidence deliberate indifference to serious medical needs." Id. at 106.  Thus, a cognizable claim has
6  two elements: "the seriousness of the prisoner's medical need and the nature of defendant's response
7  to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991*), overruled on other grounds*
8  *by* WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

9  Plaintiff alleges he suffers from a congenital defect of his feet in which he has no arch in either
10 foot.  (Doc. 31 at 8).  Plaintiff alleges that walking without medically prescribed orthotics is very
11 painful. Id..  Non-presciption orthotics, such as "Dr. Scholl's" insoles provide no relief for Plaintiff.
12 Id. at 9.  Furthermore, Plaintiff alleges that after his arch supports and orthopedic shoes were removed
13 from him and he was forced to wear non-orthopedic shoes, he developed foot ulcers, callouses and
14 bunions and was required to see a podiatrist regularly for months. Id. at 8.  Thus, at this early stage in
15 the proceeding, the Court finds these allegations sufficient to demonstrate Plaintiff suffered from a
16 serious medical condition. Coleman v. Wilson, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995).

17       a. PA Byers

18 With regard to P.A. Byers, Plaintiff asserts Byers failed to examine him and refused to
19 prescribe orthopedic shoes. (Doc. 31 at 8-9).  Plaintiff explains that he "attempted to reasonably talk to
20 PA Byers concerning the need for orthotics to no avail and [PA Byers] again refused to examine the
21 Plaintiff's feet." Id. at 9.  PA Byers refused to examine Plaintiff and indicated that the state budget did
22 not allow for orthopedic shoes. Id.  It was not until Plaintiff's transfer to KVSP that Plaintiff was
23 examined by a podiatrist who prescribed him a pair of orthopedic shoes. Id.  Given Byers' cursory
24 response to Plaintiff's serious medical need, the Court finds that Plaintiff states a cognizable Eighth
25 Amendment claim of failure to provide adequate medical care at this early juncture.

26       b. Lt. Gallagher

27 With regard to Lt. Gallagher, Plaintiff indicates he made Lt. Gallagher aware of his need for
28 the orthopedic shoes and the arch supports by demonstrating that the arch supports could not fit into

1  prison-issued shoes. (Doc. 31 at 8). Gallagher acknowledged understanding that Plaintiff needed the
2  shoes but refused to allow Plaintiff to have them. Id. Notably, Plaintiff alleges the appeal required
3  medical staff to review the shoes and determine whether they were for a medical need. Id. However,
4  Gallagher looked at the shoes and consulted with medical staff but informed medical staff that the
5  shoes were personal property and would not be allowed in Ad Seg. Id. at 8. Taken in a light most
6  favorable to Plaintiff, Plaintiff states a cognizable claim against Lt. Gallagher.

7        **D.**      **Procedural Due process and Disciplinary Hearings.**

8        The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a
9  person of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556
10 (1974).  A plaintiff alleging a procedural due process violation must first demonstrate that he was
11 deprived of a liberty or property interest protected by the Due Process Clause and then demonstrate
12 that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of
13 Corr. v. Thompson, 490 U.S. 454, 459-60 (1989). McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.
14 2002). The Due Process Clause in of itself protects only those interests that are implicit in the word
15 "liberty." *See, e.g.*, Vitek v. Jones, 445 U.S. 480, 493 (1980) (liberty interest in avoiding involuntary
16 psychiatric treatment and transfer to a mental institution). A state statute or regulation, however, gives
17 rise to a protected liberty interest if it imposes conditions of confinement that constitute an "atypical
18 and significant hardship [on the prisoner] in relation to the ordinary incidents of prison life." Sandin
19 v. Conner, 515 U.S. 472, 484 (1995). This requires a factual comparison between the conditions of
20 confinement caused by the challenged action and the basic conditions of prison life. See Wilkinson,
21 545 U.S. at 223-24 (placement of prisoners in a highly restrictive "supermax" prison implicated a
22 protected liberty interest).

23       Here, Plaintiff fails to state a procedural due process claim in his third amended against Lt.
24 Goss and Lt. Gallagher because there are no facts alleged that he was deprived of any liberty interest
25 as a result of the June 19, 2010, disciplinary hearing.  Plaintiff's acquittal of the RVR report and the
26 lack of discipline received as a result of the false report moots Plaintiff's claim that Lt. Goss created a
27 false report and failed to make his witnesses available at the hearing. Similarly, while Plaintiff claims
28 that Lt. Gallagher falsely testified against Plaintiff, the Due Process clause does not guarantee freedom

14

from false testimony. *See e.g.*, Kennedy v. Hayes, 1:09-CV-01946-JLT, 2010 WL 5440805 (E.D. Cal. Dec. 28, 2010).

In addition, Plaintiff indicates that Goss denied Plaintiff's request to present witnesses by not making them available at the June 19, 2010, disciplinary hearing. The Ninth Circuit has determined that prisoners do not possess an unlimited right to call witnesses at a disciplinary hearing. Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003). However, prison officials are required to "make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." Serrano, 345 F.3d at 1079. A blanket denial of an inmate's right to call witnesses at a disciplinary hearing implicates an inmate's due process rights. *See* Id. Examining the claim in the light most favorable to the Plaintiff, Lt. Goss seemingly refused to permit Plaintiff to present his witnesses at trial without providing any explanation.

In his third amended complaint, Plaintiff fails to demonstrate that any deprivation of Plaintiff's liberty occurred. Namely, Plaintiff's RVR conviction that resulted from Lt. Goss' conduct was overturned by the Warden on August 10, 2010. While Plaintiff was convicted of battery on September 22, 2010, this second hearing was conducted by Lt. Oehlert who considered the independent report in finding Plaintiff guilty. (Doc. 31 at 5). As such, Plaintiff fails to state a cognizable against Lt. Gallagher and Lt. Goss. Therefore, the Court recommends that the claim be **DISMISSED**.

## **ORDER**

Accordingly, it is **HEREBY ORDERED** that:

1. Service of the third amended complaint is appropriate for the following claims:
   a. Plaintiff's First Amendment claim of retaliation against Goss and Langler; and
   b. Plaintiff's Eighth Amendment claim of failure to provide adequate medical care against Byers and Gallagher;

3. The Clerk of the Court shall send Plaintiff four USM-285 forms, four summonses, a "Notice of Submission of Documents" form, an instruction sheet, and a copy of the third amended complaint (Doc. 31);

4. Within **thirty (30) days** from the date of this order, Plaintiff shall complete the attached "Notice of Submission of Documents" form and submit the completed form to the Court with the

following documents:

    a. One completed summons form for <u>each</u> of the defendants listed above;

    b. A completed USM-285 form for <u>each</u> of the defendants listed above; and

    c. Five copies of the endorsed third amended complaint (Doc. 31);

5. Plaintiff need not attempt service on the defendants and need not request waiver of service. Upon receipt of the above-described documents, the Court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs; and

6. **<u>Plaintiff is cautioned that failure to comply with this order will result a recommendation of the dismissal of this case.</u>**

### FINDINGS AND RECOMMENDATIONS

Accordingly, the Court **HEREBY RECOMMENDS** that the remaining claims and defendants be dismissed without leave to amend**.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within **<u>14 days after being served with these findings and recommendations</u>**, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  **<u>The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order</u>**. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 10, 2013**                    **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE