# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LAWRENCE CHRISTOPHER SMITH,

     Plaintiff,

     v.

D. GOSS, et al.,

     Defendants.

Case No.: 1:10-cv-01814-LJO-JLT (PC)

**ORDER VACATING ORDER FINDING SERVICE OF CERTAIN CLAIMS APPROPRIATE AND DIRECTING THE CLERK OF THE COURT TO PROVIDE PLAINTIFF WITH SERVICE DOCUMENTS AND WITHDRAWING FINDING AND RECOMMENDATION DISMISSING CERTAIN CLAIMS**
(Doc. 33)

**FINDING AND RECOMMENDATION DISMISSING CERTAIN CLAIMS**
(Doc. 31)

## I.    Background

Plaintiff Lawrence Christopher Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff timely submitted his Third Amended Complaint ("3rd AC"). (Doc. 31).  The 3rd AC was previously screened and a findings and recommendation issued, to which Plaintiff filed objections.  (Docs. 33, 35.)  Upon receipt of Plaintiff's objections, the Court revisited the findings and recommendation and has re-screened the 3rd AC, will withdraw the prior findings and recommendations and issuing anew.  As discussed in

1

1  detail and for the reasons set forth below, the Court finds that Plaintiff should be allowed to proceed

2  on the following cognizable claims:  retaliation in violation of the First Amendment against

3  Defendants Lt. Goss, Lt. Gallagher, and Officer Langler; deliberate indifference to his serious medical

4  needs in violation of the Eighth Amendment against Defendants PA Byers and Officer Langler; and

5  due process violations against Defendant Lt. Goss.[1]  The Court **RECOMMENDS** that the remaining

6  claims and Defendants be **DISMISSED.**

7  **II.      Screening Requirement**

8         The Court is required to screen complaints brought by prisoners seeking relief against a

9  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

10  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

11  frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary

12  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. §

13  1915(e)(2)(B)(i)-(iii).

14  **III.     Pleading Standards**

15         **A.  Fed. R. Civ. P. 8(a)**

16         "Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards

17  than formal pleadings drafted by lawyers.'"  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting

18  Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  "[They] can only be dismissed for failure to state a

19  claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim

20  which would entitle him to relief.'"  Id.  Under Federal Rule of Civil Procedure 8(a), "[a] pleading that

21  states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's

22  jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to

23  relief; and (3) a demand for the relief sought."  Fed. R. Civ. P. 8(a).  Each allegation must be simple,

24  concise, and direct. Fed. R. Civ. P. 8(d)(1).  While a complaint "does not need detailed factual

25  allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more

26

27  [1] The major difference between this findings and recommendation and its predecessor (Doc. 33) is that Plaintiff is now also being allowed to proceed on a retaliation claim against Defendant Lt. Gallagher and a due process claim against Defendant Lt. Goss -- which were not previously found to be cognizable.  Thus, the vast majority of the discussion and

28  analysis is duplicated herein, except as applies to these two additional cognizable claims.

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id., at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id., at 679.

### B. 42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. See Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## IV. Factual Allegations of the Third Amended Complaint

On an undisclosed date, an unnamed male correctional officer at California Substance Abuse Treatment Facility and State Prison ("Corcoran") in Corcoran, California, made unsolicited sexual advances toward Plaintiff. (Doc. 31, at 3.) Plaintiff subsequently filed an inmate grievance against the deviant officer and was initially interviewed by Lieutenant ("Lt.") Goss about this complaint. (Id.) During a second interview, Lt. Goss requested that Plaintiff drop his complaint. (Id., at 3-4.) When Plaintiff refused, Lt. Goss destroyed Plaintiff's administrative grievance form and threatened further reprisal. (Id., at 4.)

On April 24, 2010, Plaintiff and his cellmate became involved in an altercation in which his

cellmate became seriously injured. (Id., at 4.)  Officer Cribbs then confiscated Plaintiff's medically

authorized orthotics as evidence because blood stains were found on his shoes after the altercation.

(Id., at 7.)   Plaintiff suffers from a "very debilitating congenital defect of his feet" and walking is very

painful without his orthotics because he lacks arches.  (Id., at 8.)

Shortly after the April 24, 2010 altercation, Plaintiff filed an inmate medical grievance

concerning the confiscation of his orthotics. (Id., at 8.)  Physician Assistant ("PA") Byers initially met

with Plaintiff concerning his medical grievance.  (Id., at 9.)  Plaintiff avers that he began to develop

"foot ulcers, bunions, and callouses" from wearing ill-fitting shoes.  (Id., at 8.)  Plaintiff avers that PA

Byers refused to examine Plaintiff, despite Plaintiff's "attempt [] to reasonably talk with PA Byers

concerning the need for orthotics."  (Id., at 9.)

As a result of the April 24, 2010 altercation, prison personnel placed Plaintiff in the

Administrative Segregation Unit ("Ad. Seg."), where he received a CDCR Rules Violation Report,

Form 115 ("RVR-115") violation report. (Id., at 4.)  Three days after placement in Ag. Seg., Plaintiff

received an order from the California Court of Appeals denying his habeas corpus claim.  (Id., at 10.)

On April 28, 2010, Plaintiff requested that Officer Langler place him on priority library user

("PLU") status in order to address the denial of his habeas claim within the 15-day deadline permitted

by California law.  (Id., at 10.)  Officer Langler granted Plaintiff's request in full on May 5, 2013, but

he did not receive his legal property until a week later.  (Id., at 11.)  It appears that Plaintiff did not

actually access the law library until May 15, 2013.  (Id., at 10.)

During the hearing on the RVR hearing, which seemingly occurred on June 14, 2010, Plaintiff

presented exculpatory evidence to Lt. Popper, who acted as the senior hearings officer.  (Id.)  Lt.

Popper terminated the initial hearing and ordered an independent investigation of the incident.  (Id.)

On June 19, 2010, Lt. Goss held an impromptu hearing on Plaintiff's RVR-115 charge. (Id., at

4.)  Lt. Goss excluded Plaintiff's witnesses and later dismissed Plaintiff from the hearing for

"attempting to speak up and declare due process rights."  (Id., at 5.)  Lt. Gallagher falsely testified

concerning the June 14, 2010, hearing.  (Id., at 7.)  Lt. Goss issued an RVR-115 finding of an

accessory to attempted murder by another inmate.  (Id., at 5.)

On August 19, 2010, Corcoran's Warden vacated Lt. Goss's RVR.  (Id., at 5.)  On September

4

22, 2010, Lt. Oehlert held a second hearing on Plaintiff's RVR-115 charge arising from the altercation with his cellmate.  (Id.)    The independent report was used during this proceeding, and prison personnel found Plaintiff guilty of battery causing serious bodily injury.  (Id., at 5.)

Later, on an undisclosed date, Officer Langler banned Plaintiff from the law library.  (Id., at 11.)  Plaintiff confronted Officer Langler about the denial of access.  (Id.)  Officer Langler replied, "Smith[,] you know damn well why you can't come to my library[,] showing up my Lieutenant like that with that appeal." (Id.)

Also in August of 2010, medical personnel ordered the release of Plaintiff's medical shoes to him.  (Id., at 8.)  However, Lt. Gallagher refused to release Plaintiff's shoes to him.  (Id.)  Plaintiff informed Lt. Gallagher that his arch supports would only work with Plaintiff's special orthopedic shoes.  (Id.)  Lt. Gallagher responded that his orthopedic shoes were not permitted in the Ad. Seg.  (Id., at 8.)[2]

## V.  Discussion and Analysis

### A.  First Amendment Claims

#### 1.  Retaliation

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting Rhodes, 408 F.3d at 567-68).  An adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities."  White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting Mendocino Envtl. Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

---

[2] In addition to these factual allegations, Plaintiff raises claims which occurred after Plaintiff filed his initial complaint.  Given that Plaintiff has been advised on numerous occasions that he cannot submit buckshot complaints when amending his claim, the Court declines to summarize Plaintiff's buckshot allegations.

### a. Lt. Goss

Plaintiff alleges he complained about sexual harassment by a male correctional officer to Lt. Goss.  In this process, Lt. Goss destroyed a complaint made by Plaintiff and discarded it because Plaintiff refused to stop pursuing his sexual harassment complaint. (Doc. 31 at 4).  Previously, this Court has determined a plaintiff stated a cognizable claim when he alleged a correctional officer destroyed an inmate appeal. Leinweber v. Day, 2010 U.S. Dist. LEXIS 35935, at *9 (E.D. Cal. Mar. 13, 2010).

Similarly, Plaintiff indicates that Lt. Goss, "blinded by anger," also retaliated against Plaintiff by issuing a false finding of guilt on the charge of attempted murder, despite Lt. Popper's order for an independent investigation. (Doc. 31, at 4-5).  In Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), the Ninth Circuit determined that a cognizable claim of retaliation existed where a plaintiff alleged that he was falsely accused of prison gang activity in retaliation for filing an inmate grievance.  Id., at 1288-1289.

Furthermore, Plaintiff has demonstrated that Lt. Goss' finding of guilty was reversed by the Warden, and thus his claim is not barred by Heck v. Humphrey, 512 U.S. 477 (1994) (holding that a suit for damages on a civil rights claim concerning an allegedly unconstitutional conviction or imprisonment cannot be maintained unless the plaintiff can demonstrate that a conviction has been set aside or otherwise declared invalid).  Because "[a]n allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983," Plaintiff has stated a cognizable claim against Lt. Goss.  See Leinweber, 2010 U.S. Dist. at *9 (citing Bruce, 351 F.3d at 1288).[3]

### b. Officer Langler

Plaintiff appears to set forth a claim of retaliation against Officer Langler, when he alleges Officer Langler enforced an unofficial ban that kept Plaintiff from the law library. (Doc. 31, at 11.)  In support of this contention, Plaintiff alleges that when he confronted Officer Langler about not getting

---

[3]Plaintiff again avers that Sgt. Anderson's and Defendant Doe's actions acted within a retaliatory nexus influenced by Lt. Goss and Officer Langler.  However, as discussed below, Plaintiff fails to state any claim against these individuals.  Thus, the claim is **DISMISSED.**

access to the law library, Officer Langler told him that Plaintiff "knew damn well why you can't come to my library showing up [Goss] like that with that appeal." Id.  It appears that Officer Langler prohibited Plaintiff from accessing the law library because Plaintiff appealed his June 19, 2010 RVR-115 conviction. Id.  Such an action could reasonably have a chilling effect on a litigant's exercise of their First Amendment rights. White, 227 F.3d at 1228.  Thus, taking the complaint in the light most favorable to the Plaintiff, Plaintiff states a cognizable claim against Officer Langler.

### c. Defendant Doe

For the first time in the 3rd AC, Plaintiff alleges that Defendant Doe withheld Plaintiff's legal property in retaliation for Plaintiff's complaint about the unnamed officer's sexual advances.  (Doc. 31, at 13.)  Specifically, Defendant Doe allegedly told Plaintiff that he did not "condone homophobic behavior towards colleagues[;] everyone needs love," and thus somehow retaliated against the Plaintiff. Id.  It thus appears that the Plaintiff believes Defendant Doe retaliated against him for complaining about the sexual advances of Defendant Doe's colleague rather for the mere fact of filing an inmate grievance.  Such a claim is more akin to a claim of retaliation for refusing sexual advances in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e.  While the Ninth Circuit recognizes that inmates have a right to be free from sexual harassment, (Schwenk v. Hartford, 204 F.3d 1187 (9th 2000)), Plaintiff does not allege the Defendant Doe sexually harassed him. See (Doc. 31.)

Additionally, this key fact was omitted from Plaintiff's original, First, and Second Amended Complaints and from his prior objections. (ECF Nos. 1, 18, 24, 28.)  Given the fluidity of Plaintiff's claim against this individual, it appears that Plaintiff believes he can state a claim against Defendant Doe by now merely attributing some retaliatory comment to him.  In determining plausibility, the Court is permitted to use its common sense, and finds Plaintiff's new allegations against Defendant Doe, coupled with their previous absence from the case, wholly unconvincing. Iqbal, 556 U.S. at 679.

Furthermore, as he previously alleged, Plaintiff claims that he was injured by Defendant Doe when Doe denied him access to his legal property.  (Doc. 31, at 12-13.)  Plaintiff claims that Defendant Doe's delay caused the California Supreme Court to deny Plaintiff's habeas corpus claim because of a procedural bar. Id.  However, Plaintiff explains that he could have easily shown that he

was exempt from this procedural bar due to inept appellate counsel.  (Id., at 12-13.)  Nevertheless, a review of the record indicates that Plaintiff represented himself during his habeas corpus proceedings, and thus his reference to his inept appellate counsel with reference to his habeas proceedings is unavailing.[4]  While awaiting receipt of this property may have presented an inconvenience to Plaintiff, it does not present any cognizable injury under § 1983.  In fact, Plaintiff's admission that he filed an appeal – although allegedly inadequate – with the California Supreme Court demonstrates he cannot state a claim.  Thus, Plaintiff fails to state a claim against Defendant Doe.  Therefore, the Court recommends that Plaintiff's retaliation claim against Defendant Doe be **DISMISSED**.

### d. Lt. Gallagher

Plaintiff alleges in the 3rd AC alleges that Lt. Gallagher testified falsely against him at the RVR hearing Lt. Goss conducted (Doc. 31, p. 5); retaliated by denying Plaintiff his orthotic shoes and arch supports when he was in Ad Seg (id., at 8); laughed when he gave back only Plaintiff's arch supports (knowing they were useless without his orthotic shoes) (id.); and blocked Plaintiff's receipt of the orthotic shoes when the second level review of Plaintiff's inmate grievance thereon indicated that they should be given back to Plaintiff (id.).  This suffices to state a cognizable retaliation claim against Lt. Gallagher.

### 2. Access to the Courts

Plaintiff again asserts a multifaceted First Amendment claim of denial of access to the courts against Officer Langler and Sgt. Anderson.  (Doc. 31, at 11-16.)  Under the First Amendment, prisoners have a right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996).  The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions.  Id., at 354.  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).

---

[4] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b); United States v. Bernal–Obeso, 989 F.2d 331, 333 (9th Cir.1993). The record of court proceedings is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n. 9 (9th Cir.1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir.1980).

In addition to demonstrating official acts frustrating the inmate's litigation, a prisoner asserting a backward-looking denial of access claim must show the loss of a "nonfrivolous" or "arguable" underlying claim. *See* Christopher v. Harbury, 536 U.S. 403, 413-414 (2002). The underlying claim must be set forth in the pleading claiming a denial of access to the courts "as if it were being independently pursued." Id., at 417.  Finally, the plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id., at 415.

A plaintiff must allege "actual injury" as the threshold requirement to any First Amendment claim of denial of access to the Courts.  *See* Lewis, 518 U.S. at 351-53.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id.   The failure to demonstrate an actual injury is jurisdictional. Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a "nonfrivolous legal claim had been frustrated" is fatal").  As discussed below, Plaintiff fails to state a claim of denial of access to the courts.

### a.  **Officer Langler**

Plaintiff alleges he was injured when he was denied PLU status, when he had to "wrangle" with Officer Langler to get his legal property, and that the law library possessed subpar legal resources. (Doc. 31, at 14.)  As previously advised, inmates do *not* have a "freestanding right" to access a law library or legal assistance.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  The accessibility or adequacy of a law library is of constitutional concern only when it thwarts a prisoner from exercising his right to access the courts for the purpose of seeking redress for "claimed violations of fundamental constitutional rights."  Id. (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).

Moreover, an inmate must demonstrate that he suffered "actual injury" because of deficiencies in law library access or materials, "such as the inability to meet a filing deadline or to present a claim" in a direct appeal, habeas petition, or a § 1983 action.  Lewis, 518 U.S. at 348, 355.  As the United States Supreme Court has explained:

> [A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the

1    inadequacy of the prison infirmary.

2    Id. at 351.

3         Plaintiff avers that Officer Langler failed to provide him PLU status, which resulted in a denial

4    of his habeas corpus claim for his conviction. (Doc. 31, at 10.)  Plaintiff notes that the 4th District

5    Court of Appeals for the State of California ("4th DCS") denied his habeas claim on April 27, 2010,

6    because Plaintiff failed to meet the standard set forth in People v. Duvall, 9 Cal. 4th 464, 886 P.2d

7    1252 (1995).  Id.  Namely, Plaintiff failed to set forth an adequate factual basis for his claim. Id.  Thus,

8    Plaintiff seemingly argues that he could have easily ameliorated this error had he been provided

9    adequate access to the law library.  Id.

10        Contrary to Plaintiff's argument, however, Plaintiff was well aware of the legal standard set

11   forth in Duval prior to April 27, 2010.  A review of Plaintiff's habeas corpus claim indicates that on

12   July 8, 2009, the California Superior Court of San Diego County denied Plaintiff's initial petition for

13   writ of habeas corpus in the matter of In re Lawrence Smith, Case No. HC 19620, SCD 186917, and

14   SCD 187273, Order dated July 8, 2009.  See Smith v. Biter, Case No. 3:11-cv-1003-JLS-PCL, Doc. 1-

15   1, (C.D. Cal. March 12, 2012).  The San Diego Superior Court specifically advised that:

16        "Moreover, in People v. Duvall (1995) 9 Cal.4th 464, the Court said: "[t]the petitioner bears a
          heavy burden initially to plead sufficient grounds for relief, and then later to prove them…¶
17        To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas
          corpus must be made by petition, and "[i]f the imprisonment is alleged to be illegal, the
18        petition must also state in what the alleged illegality consists." ([Penal Code] § 1474, subd.
          2.)  The petition should both (i) state fully and with particularity the facts on which relief is
19        sought (People v. Karis (1988) 46 Cal.3d 612, 656; In re. Swain (1949) 34 Cal.2d 300, 304),
          as well as (ii) include copies of reasonably available documentary evidence supporting the
20        claim, including the pertinent portions of trial transcripts and affidavits or declarations.
          (Citations). 'Conclusory allegations made without any explanation of the basis for the
21        allegations do not warrant relief, let alone an evidentiary hearing'. (Karis, supra, at p. 656.)"
22

23   Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 2-3 (emphasis added) (quotations and citations in original).

24        Rather than appeal the decision of the San Diego Superior Court to the 4th DCA, Plaintiff

25   seemingly filed a second petition for a writ of habeas corpus in the matter of In re. Lawrence Smith,

26   Case No. HC 19620, SCD 186917, and SCD 187273.  See Smith, Case No. 3:11-cv-1003, Doc. 1-1 at

27   8-10.  The San Diego Superior Court noted that Plaintiff "provide[d] proof that he received [the] July

28   8, 2009 Order because he [had] filed a copy of it as an exhibit to" his second petition.  Id., at 8.  The

                                                        10

Court admonished Plaintiff because he chose to "ignore everything that was stated in the July 8, 2009" order and he chose to file a "word-for-word repeat of [the original] Petition as if the Court had never spent the time to prepare [the July 8, 2009] original denial." Id., at 8.

The argument that Officer Langler's delay in providing Plaintiff with PLU status and his legal documents after April 27, 2010 prevented Plaintiff from researching the legal standard required to state his California habeas claim is nefarious. Clearly, as indicated above, Plaintiff was well aware of the standard required by Duvall. Given that Duvall required Plaintiff to merely state sufficient *factual* allegations, the trial errors Plaintiff perceived were well within his first-hand knowledge *prior* to April 27, 2010, and thus no legal research was needed. Furthermore, and determinative of the Court's decision, Plaintiff does not aver that Officer Langler denied him access to the law library at the time he submitted his petition to the Superior Court or to the 4th DCA. Thus, Plaintiff fails to causally link Officer Langler's actions to *Plaintiff's failure* to submit a habeas petition that conformed with the Duval standard.

Next, the Court finds Plaintiff's argument that Officer Langler's refusal to grant PLU status somehow caused Plaintiff to submit an "exact replica of the Plaintiff's writ to the Court of Appeals" to the California Supreme Court wholly unconvincing. (Doc. 31, at 11.) In its July 8, 2009 Order, the San Diego Superior Court explicitly advised Plaintiff of the legal standards needed to state his substantive habeas claim. *See* Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 4-5. Thus, the San Diego Superior Court provided Plaintiff the legal tools needed to restate his habeas appeal. Yet, for unknown reasons, Plaintiff elected to submit an exact replica of his original habeas petition. *See* Smith, Case No. 3:11-cv-1003, Doc. 1-1 at 8. Thus, the notion that Plaintiff somehow needed to access the law library to inform himself of the legal standards *of which he was already aware* in order to file an appeal to the California Supreme Court lacks merit.

Finally, Plaintiff's complaint against Officer Langler for the "woefully inadequate law library" is nothing more than an assertion that the law library was subpar. (Doc. 31, at 11). As indicated above, the San Diego Superior Court previously advised Plaintiff at length of the standards needed to assert a cognizable petition for writ of habeas corpus. As such, there is no indication that the law library at Corcoran somehow caused prejudiced the Plaintiff. Thus, the Court finds that Plaintiff failed

11

1    to state a cognizable claim of access to the courts via an inadequate law library against Officer

2    Langler.  Therefore, the Court recommends **DISMISSAL** of this claim against Officer Langler.

3                                    **b.  <u>Sgt. Anderson</u>**

4           Despite the prior admonitions that Plaintiff may not file a "buckshot complaint," Plaintiff

5    continues to maintain his claims Defendant Doe[5] and Sgt. Anderson.  Fed. R. Civ. P. 18(a) permits a

6    plaintiff to join as many claims as he has against a single party.  However, "[u]nrelated claims against

7    different defendants belong in different suits."  <u>Smith v. Anti</u>, Case No. 2:07-CV-1675-GEBGGHP,

8    2008 WL 5178911 * 1 (E.D. Cal. 2008) (quoting <u>George v. Smith, et al.</u>, 507 F.3d 605, 607 (7th Cir.

9    2007)).  A "buckshot complaint" occurs where a plaintiff files unrelated claims against different

10   defendants in the same suit.  *See* <u>Smith</u>, 2008 WL at 1.  "Buckshot complaints" violate Fed. R. Civ. P.

11   18(a).

12          Plaintiff again claims Sgt. Anderson denied him his legal property and access to the Court.

13   (Doc. 31, at 13-15.)  Plaintiff now alleges that Sgt. Anderson confiscated Plaintiff's legal property on

14   October 4, 2011.  (<u>Id.</u>, at 14.)  However, Plaintiff indicates that the Court granted him an extension of

15   time up to December 31, 2011, to file a response to the motion to dismiss in his habeas corpus matter.

16   (<u>Id.</u>)  The United States District Court for the Southern District of California subsequently provided

17   him with a copy of the pleadings, but Plaintiff complains that due to "the holiday season and staff

18   shortages" he could not access KVSP's law library in time to file a proper appeal.  (<u>Id.</u>, at 14.)  Thus,

19   Plaintiff sustained no apparent injury due to Sgt. Anderson's actions.  Rather, it was the intervening

20   fact of the holiday, personnel shortages, and an extended lockdown due to a riot that allegedly

21   detained Plaintiff from filing a proper brief.

22          Moreover, even if Plaintiff were able to demonstrate that Sgt. Anderson caused Plaintiff injury,

23   Plaintiff cannot show loss of a nonfrivolous claim with regard to his habeas corpus claim in Case No.

24   Case 3:11-cv-01003-JLS-PCL.  A review of the Court's order dismissing Plaintiff's habeas corpus

25   petition indicates that *Plaintiff's* delay in filing his habeas corpus petition in federal court

26   approximately 558 days after his conviction merited dismissal of his habeas corpus claim.  <u>Smith</u>,

27

28          [5] As the Court adequately addresses the substantive merits of Plaintiff's claim against Defendant Doe above, it need not address the procedural merits of his claim against Defendant Doe.

1   Case No. 3:11-cv-1003, Doc. 24.  The Court rejected Plaintiff's argument that the trial court's delay in

2   providing him free copies of his pleadings constituted a state-created impediment and thus entitled him

3   to a tolling of the statute of limitations.  Id., at 4.  Finally, the Court found that the six month delay

4   between Plaintiff's successive habeas petitions filed with the San Diego Superior Court was

5   unreasonable.  Id.  Thus, it appears that Plaintiff possessed no meritless habeas corpus claim in Case

6   3:11-cv-01003-JLS-PCL.

7           Finally, these allegations occurred *after* the filing of the complaint.[6]  Plaintiff cannot bootstrap

8   his First Amendment claim against Sgt. Anderson onto his current lawsuit.  Furthermore, Plaintiff

9   provides no factual support to demonstrate that Sgt. Anderson's actions are part of a common factual

10  nexus with his other claims.  Thus, his claim against Sgt. Anderson is **DISMISSED.**

11          **C.  Eighth Amendment**

12                **1.  Failure to Provide Adequate Medical Care**

13          The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized

14  standards, humanity, and decency.'"  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (*quoting* Jackson v.

15  Bishop, 404 F.2d 571, 579 (8th Cir. 1976)).  The prohibition of cruel and unusual punishment requires

16  that prison officials to provide medical care to prisoners.  Id., at 104-05.  To state a claim arising in the

17  context of inadequate medical care, a plaintiff must point to "acts or omissions sufficiently harmful to

18  evidence deliberate indifference to serious medical needs."  Id., at 106.  Thus, a cognizable claim has

19  two elements: "the seriousness of the prisoner's medical need and the nature of defendant's response

20  to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991*), overruled on other grounds*

21  *by* WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

22          Plaintiff alleges he suffers from a congenital defect of his feet in which he has no arch in either

23  foot.  (Doc. 31, at 8.)  Plaintiff alleges that walking without medically prescribed orthotics is very

24  painful.  (Id.)  Non-prescription orthotics, such as "Dr. Scholl's" insoles provide no relief for Plaintiff.

25  (Id., at 9.)  Furthermore, Plaintiff alleges that after his arch supports and orthopedic shoes were

26  removed from him and he was forced to wear non-orthopedic shoes, he developed foot ulcers,

27

28          ──────────────
            [6]Plaintiff alleges that some of his claim against Officer Anderson arose in October of 2011.

13

callouses and bunions and was required to see a podiatrist regularly for months.  (Id., at 8.)  Thus, at this early stage in the proceeding, the Court finds these allegations sufficient to demonstrate Plaintiff suffered from a serious medical condition.  Coleman v. Wilson, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995).  Plaintiff's allegations regarding his need for orthopedic shoes and arch supports are only directed at Defendants PA Byers and Lt. Gallagher, which are discussed immediately below.  Thus, any such claims against any of the other defendants named in this action are **DISMISSED**.

### a. PA Byers

With regard to P.A. Byers, Plaintiff asserts Byers failed to examine him and refused to prescribe orthopedic shoes.  (Doc. 31, at 8-9.)  Plaintiff explains that he "attempted to reasonably talk to PA Byers concerning the need for orthotics to no avail and [PA Byers] again refused to examine the Plaintiff's feet."  (Id.,  at 9.)  PA Byers refused to examine Plaintiff and indicated that the state budget did not allow for orthopedic shoes.  Id.  It was not until Plaintiff's transfer to KVSP that Plaintiff was examined by a podiatrist who prescribed him a pair of orthopedic shoes.  Id.  Given Byers' cursory response to Plaintiff's serious medical need, the Court finds that Plaintiff states a cognizable Eighth Amendment claim of failure to provide adequate medical care at this early juncture.

### b. Lt. Gallagher

With regard to Lt. Gallagher, Plaintiff indicates he made Lt. Gallagher aware of his need for the orthopedic shoes and the arch supports by demonstrating that the arch supports could not fit into prison-issued shoes. (Doc. 31, at 8.)  Lt. Gallagher acknowledged understanding that Plaintiff needed the shoes but refused to allow Plaintiff to have them.  (Id.)  Notably, Plaintiff alleges the appeal required medical staff to review the shoes and determine whether they were for a medical need.  (Id.)  However, Gallagher looked at the shoes and consulted with medical staff but informed medical staff that the shoes were personal property and would not be allowed in Ad Seg.  (Id., at 8.)  Taken in a light most favorable to Plaintiff, Plaintiff states a cognizable deliberate indifference claim against Lt. Gallagher.

### D. Procedural Due Process -- Disciplinary Hearings.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for

deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.  As long as the five minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

Prison officials may "limit a prisoner's right to defend himself [,but] they must have a legitimate penological interest."  Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense).  The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff."  Ponte v. Real, 471 U.S. 491, 495 (1985); see also Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003); Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987) (per curiam

Further, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ."  Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926

1    F.2d 800, 802-03 (9th Cir. 1991); <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269-70 (9th Cir. 1989); <u>Jancsek,</u>

2    <u>III v. Oregon bd. Of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987); <u>Cato v. Rushen</u>, 824 F.2d 703, 705

3    (9th Cir. 1987); *see* <u>Burnsworth v. Gunderson,</u> 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no

4    evidence of guilt may be unnecessary to demonstrate existence of liberty interest.)  "Some evidence"

5    must support the decision of the hearing officer.  <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).

6    The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in

7    the record that could support the conclusion reached . . . ."  <u>Id.</u> at 455-56 (emphasis added).  ).

8    However, while the due process requirements for a prison disciplinary hearing are in many respects

9    less demanding than those for criminal prosecution, they are not so lax as to let stand the decision of a

10   biased hearing officer who dishonestly suppresses evidence of innocence.  <u>Edwards v. Balisok</u>, 520

11   U.S. 641, 647 (1997) *cf.* <u>Wolff v. McDonnell,</u> 418 U.S. 539, 570-571 (1974).  Further, the "some

12   evidence" standard does not apply to original rules violation report where a prisoner alleges the report

13   is false *and retaliatory*.  <u>Hines v. Gomez</u>, 108 F.3d 265, 268-69 (9th Cir. 1997).

14        In the 3rd AC, Plaintiff alleges that, after the altercation with his cellmate, an RVR was filed

15   against him for attempted murder. (Doc. 31, at 4.)   Lt. Popper agreed that the RVR for attempted

16   murder was inaccurate, halted the proceedings, and requested appointment of an "investigative

17   employee" on Plaintiff's behalf. <u>Id</u>.  Despite this, Lt. Goss held an "impromptu" hearing on the RVR

18   against Plaintiff for attempted murder at which Lt. Gallagher falsely testified against Plaintiff. (Doc.

19   31, at 4-5.) At this same hearing, Plaintiff was not allowed to call any witnesses or present any

20   evidence. <u>Id.</u>   Lt. Goss found Plaintiff guilty of attempted murder of his cellmate.  (<u>Id.</u>)  Plaintiff

21   successfully appealed this finding and obtained a determination that he was guilty of a lesser offense.

22   <u>Id</u>.  Plaintiff alleges that Lt. Goss engaged in his action out of retaliation for Plaintiff having filed and

23   refusing to withdraw his initial complaint against an officer for sexual assault.  (<u>Id.</u>)  Therefore, per

24   <u>Hines</u>, Plaintiff has stated a cognizable claim against Lt. Goss for violation of his procedural due

25   process rights.

26   **VI.  <u>Order</u>**

27        Accordingly, it is **HEREBY ORDERED** that The Order Finding Service of Certain Claims

28   Appropriate and Directing the Clerk of the Court to Provide Plaintiff with Service Documents,

Findings and Recommendation Dismissing Certain Claims, that issued on September 10, 2013 (Doc. 33), is **VACATED**.

## VII.  Findings and Recommendations

Further, the Court **HEREBY RECOMMENDS** as follows:

1.    that this action proceed on Plaintiff's First Amendment claim of retaliation against Defendants Lt. Goss, Lt. Gallagher, and Officer Langler; Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical condition against PA Byers and Lt. Gallagher; and Plaintiff's due process claim against Lt. Goss; and

2.    that the remaining claims and Defendants Sgt. Anderson and Doe be dismissed with prejudice**.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **November 18, 2013**                _____/s/ Jennifer L. Thurston_
                                                              UNITED STATES MAGISTRATE JUDGE

17