# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH,<br><br>Plaintiff,<br><br>v.<br><br>ALLISON, et al.,<br><br>Defendants. | **Case No.  1:10-cv-01814-LJO-JLT (PC)**<br><br>**AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S OPPOSITION**<br><br>**(Docs. 69, 88, 90, 94)**<br><br>**OBJECTIONS DUE WITHIN 30 DAYS** |

## I.    Procedural History

Plaintiff, Lawrence Christopher Smith, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983 on Plaintiff's First Amendment claim of retaliation against Defendants Lt. Goss, Lt. Gallagher, and Officer Langler; Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical condition against PA Byers and Lt. Gallagher; and Plaintiff's due process claim against Lt. Goss in the Third Amended Complaint ("3rdAC").  (*See* Docs. 42, 47.)

On July 22, 2014, Defendants Goss and Gallagher ("Defendants")[1] filed a motion for summary judgment arguing Plaintiff failed to comply with the PLRA by not exhausting his

---

[1] Defendant Langler recently filed a waiver of service (Doc. 85) and service is still being attempted on Defendant Byers.

1

available administrative remedies prior to filing suit.  (Doc. 69.)  Plaintiff requested and received extensions of time to file his opposition (*see* Docs. 74, 77) with which he complied (Doc. 80). Defendants filed a reply, notices of errata for errors in their motion, and a motion to strike Plaintiff's Opposition.  (Docs. 82. 83. 87, 88.)  Plaintiff filed an opposition to Defendants' motion to strike his opposition to the motion for summary judgment, to which Defendants replied. (Docs. 93, 96.)  The motions are deemed submitted.  Local Rule 230(l).

Having read and considered the pleadings and, for the reasons set forth below, the Court recommends Defendants' motion for summary judgment be granted in part and denied in part and that their motion to strike Plaintiff's opposition be denied.

## II.    Summary Judgment Standard

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) *cert denied*, 540 U.S. 810 (2003).  On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling *Wyatt* with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a).  *Albino v. Baca*, 747 F.3d 1162, 1168-69 (9th Cir. 2014) (en banc).  Following the decision in *Albino*, Defendants may raise exhaustion deficiencies as an affirmative defense under §1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[2] or (2) a motion for summary judgment under Rule 56 if it has been pled and preserved.  *Id*.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Any party may move for summary judgment.  The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position,

---

[2] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."  *Albino*, 2014 WL 1317141, at *1.

1    whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

2    parts of materials in the record, including but not limited to depositions, documents, declarations,

3    or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

4    genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

5    Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the

6    record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v.*

7    *San Francisco Unified School Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v.*

8    *Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

9        Unlike a motion for summary judgment addressing the merits of a plaintiff's claims,

10    because exhaustion under the PLRA is an affirmative defense (*Wyatt*, 315 F.3d at 1119),

11    "defendants have the burden of raising and proving the absence of exhaustion."  *Id.*  "[T]there can

12    be no 'absence of exhaustion' unless some relief remains 'available,' a defendant must demonstrate

13    that pertinent relief remained available, whether at unexhausted levels of the grievance process or

14    through awaiting the results of the relief already granted as a result of that process."  *Brown*, 422

15    F.3d at 937, *ref. Brown v. Croak*, 312 F.3d 109, 112 (3d Cir.2002) (holding that because failure to

16    exhaust is an affirmative defense under the PLRA, a complaint cannot be dismissed where the

17    prisoner submits evidence showing, and the defendants do not disprove, that no remedy was

18    "available").  Relevant evidence includes "statutes, regulations, and other official directives that

19    explain the scope of the administrative review process; documentary or testimonial evidence from

20    prison officials who administer the review process; and information provided to the prisoner

21    concerning the operation of the grievance procedure in this case, such as in the response

22    memoranda in these cases.  With regard to the latter category of evidence, information provided

23    the prisoner is pertinent because it informs [a] determination of whether relief was, as a practical

24    matter, 'available.'"  *Id.*, at 937.

25        If Defendants meet this initial burden, the burden then shifts to Plaintiff "to designate

26    specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627

27    F.3d at 387 (citing *Celotex Corp. v. Catrett,* 477 U.S. 106, 323 (1986)).  This requires Plaintiff to

28    "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty*

1  *Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

2  However, in judging the evidence at the summary judgment stage, the Court must draw all

3  inferences in the light most favorable to the nonmoving party and determine whether a genuine

4  issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

5  *City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

6  *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue

7  for trial and, in doing so, it must liberally construe Plaintiff's filings because he is a pro se

8  prisoner.  *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations

9  omitted).

10  **III.    Exhaustion of Administrative Remedies Standards**

11  Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with

12  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

13  confined in any jail, prison, or other correctional facility until such administrative remedies as are

14  available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available

15  administrative remedies prior to filing suit.  *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d

16  1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the

17  prisoner and/or offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and applies

18  to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002).

19  Compliance with the mandatory exhaustion requirement requires prisoners to adhere to

20  the deadlines and other critical procedural rules, *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct.

21  2378 (2006), and is not satisfied by filing an untimely or otherwise procedurally defective appeal,

22  *id.*, at 83-84.  However, the failure to exhaust may be excused where the administrative remedies

23  are rendered "unavailable," with the plaintiff bearing the burden of demonstrating that the

24  grievance process was unavailable to him through no fault of his own.  *Sapp v. Kimbrell*, 623

25  F.3d 813, 822-23 (9th Cir. 2010); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010); *Brown*,

26  422 F.3d at 939-40.

27  **IV.    Defendants' Motion to Strike Plaintiff's Opposition**

28  Without providing any argument, Defendants summarily seek to strike Plaintiff's

4

1   opposition for failing to comply with Local Rule 260(b) and Federal Rule of Civil Procedure 56.

2   (Doc. 88.) These rules require any opposition to,

> reproduce the itemized facts in the Statement of Undisputed Facts and admit
> those facts that are undisputed and deny those that are disputed, including
> with each denial a citation to the particular portions of any pleading,
> affidavit, deposition, interrogatory answer, admission, or other document
> relied upon in support of that denial. The opposing party may also file a
> concise "Statement of Disputed Facts," and the source thereof in the record,
> of all additional material facts as to which there is a genuine issue precluding
> summary judgment or adjudication.

It is true that Plaintiff's opposition to Defendants' motion for summary judgment is not technically compliant.  However, there is a sufficient semblance of organization so that the Court can discern Plaintiff's arguments and the evidence he relies on is specifically identified, attached, and appears to be true and correct copies of documents which were also submitted by Defendants.   Likewise, Defendants were able to fashion a cogent reply.  Thus, Defendants' motion to strike Plaintiff's opposition to their motion for summary judgment is **DENIED**.

However, it is noted that, despite having been provided with the requirements to oppose a motion for summary judgment, [3] Plaintiff did not submit a declaration and/or affidavit to support his argument.  Accordingly, none of the arguments in his opposition are accepted as evidence. However, the Third Amended Complaint was signed under penalty of perjury and so is reviewed and considered in support of Plaintiff's opposition. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e) (A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.)

## V.   <u>Defendants' Motion for Summary Judgment</u>[4]

---

[3] Defendants' motion provided Plaintiff with notice of the requirements for opposing a motion for summary judgment per *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998);  *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

[4]  The Court has reviewed the Third Amended Complaint, the motion for summary judgment, the opposition, and the reply, but declines to exhaustively list every argument presented, every fact recited, and every piece of evidence submitted by the parties.  Omission in this order of reference to various arguments, facts, or evidence should not be interpreted by the parties as an indication that the Court overlooked that argument, fact, or piece of evidence, but rather that they were not pivotal to the issues raised in this motion.

1   Defendants argue that Plaintiff failed to exhaust his claims against Defendants Goss and

2   Gallagher, as required by the Prison Litigation Reform Act and ask if summary judgment isn't

3   granted, that a preliminary proceeding be held to resolve any factual disputes.  (Doc. 69-1, 2:1-

4   6.)[5]

5   Defendants argue that, to be timely to his claims in this action, Plaintiff would have had to

6   file inmate appeals ("IAs") between April and October of 2010 and provide evidence based only

7   on review of Plaintiff's inmate appeals filed within this time frame.  (*See* Doc. 69-1, SMJ P&A,

8   3:4-15.)  Defendants argue that they are entitled to judgment as a matter of law since Plaintiff did

9   not process any health care or custody IAs regarding his claims against them in this action

10  through the Third Level of Review.  (*Id.*)

11  **A.    Plaintiff's Claims Against Defendants[6]**

12  The claims upon which Plaintiff proceeds against Defendants Goss and Gallagher must be

13  identified in order to properly assess whether his IAs provided enough information to notify

14  prison officials of the problem and take corrective action.

15  **1. Lt. Goss**

16  Plaintiff alleged he filed an IA complaining of sexual harassment by a male correctional

17  officer and verbally complained of it to Lt. Goss.  In this process, Lt. Goss destroyed a complaint

18  made by Plaintiff and discarded it because Plaintiff refused to withdraw his IA regarding being

19  sexually harassed.  (Doc. 31 at p. 4.)  Subsequently, Plaintiff was in an altercation with his

20  cellmate which resulted in an RVR filed against him for attempted murder, for which Lt. Popper

21  agreed with Plaintiff that the charge of attempted murder was inaccurate, halted proceedings, and

22  requested appointment of an "investigative employee" on Plaintiff's behalf.  (Doc. 31, at p. 4.)

23  Despite this, Lt. Goss held an "impromptu" hearing on the inaccurate RVR against Plaintiff and

24  did not allow Plaintiff to call any witnesses or present any evidence.  (*Id.*, at pp. 4-5.)  Lt. Goss

25  _____

26  [5]All references to pagination of specific documents pertain to those as indicated on the upper right corners
via the CM/ECF electronic court docketing system.

27  [6] This is a rendition of the factual allegations upon which Plaintiff's claims against Defendant were found
cognizable which are presented here for overview purposes only.  Undisputed and disputed material facts are
discussed where/if applicable in following sections.

28

6

found Plaintiff guilty of attempted murder of his cellmate in retaliation for Plaintiff not withdrawing his grievance against the officer who sexually harassed him, despite Lt. Popper's order for an independent investigation. (*Id.*, at pp. 4-5.) Furthermore, Plaintiff demonstrated that Lt. Goss' guilty finding was reversed so his claim is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). These allegations were found to state a retaliation claim and a claim for violation of Plaintiff's due process rights against Lt. Goss. (*See* Docs. 42, 47.)

### 2. Lt. Gallagher

Plaintiff stated a retaliation claim and a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Lt. Gallagher by alleging that he was aware of all of the above and retaliated by denying Plaintiff his orthotic shoes and arch supports while he was in Ad Seg and which he knew were medically necessary (*id.,* at p. 8); he laughed when he gave back only Plaintiff's arch supports (knowing they were useless without his orthotic shoes) (*id.*); and blocked Plaintiff's receipt of the orthotic shoes when the Second Level Review of Plaintiff's inmate grievance thereon indicated that they should be given back to Plaintiff (*id.*). Notably, Plaintiff alleges the appeal required medical staff to review the shoes and determine whether they were for a medical need. (*Id.*) While Lt. Gallagher did look at the shoes and consult with medical staff, he nonetheless informed medical staff that the shoes were personal property and would not be allowed in Ad Seg. (*Id.*) (*See* Docs. 42, 47.)

### B.   Plaintiff's Inmate Appeals ("IA")

It appears Plaintiff submitted three IAs that address the claims upon which Plaintiff is proceeding against Defendants Goss and/or Gallagher.

### 1. IA #1799

In IA #1799, on April 26, 2010, Plaintiff submitted a complaint related to the denial of orthotics and orthopedic shoes by staff. (*Id*., at p. 8.) The complaint reads,

> This 602 is filed to complain about C-SATFs continuos refusal to comply with ADA Regulations concerning Appellant's need for various orthotics for feet. Twice before being placed within Administrative Segregation Unit, Appellant requested that Medical replace/or and put Appellant in line to see a podiatrist for new orthotics since previous pair of orthotics were discarded by personal of CDCR. Twice Medical has refused to hear my requests. On Sunday April 24th, 2010 Appellant was placed in ASU in which due to pending investigation into said

1    placement Appellant's own acquired orthotics were seized with various other
     items on his persons i.e. clothes, etc for evidential purposes.  Appellant now
2    appeals because due to this action and medical's refusal to comply and replace
     previous orthotics issued by the state.[7]

3    (Doc. 69-5 at 16, 18)  Plaintiff requested the following action be taken:  "Request that C-SATF

4    Personal/Medical Dept issues Appellant new orthotics as mandated by Federal/State law

5    forthwith with said appropriate new chronos since Appellant has yet to receive any of his

6    previous chronos/paperwork due to ISU Investigation." Id. at 16.  In response, the appeal was

7    partially granted and size 10 insoles were issued to Plaintiff.  Id. at 15.

8           Plaintiff disagreed with this action and stated,

9           Yes. I am dissatisfied with the response by PAC T. Byers.  As I stated in my initial
            appeal, I was not seen by an MD for my feet (Podiatrist).  All that was done was
10          an nurse decided to give me some insoles contrary to previous treatment.  T. Byers
            PAC refers to the fact that the petitioner was referred to orthopedic clinic on
11          9/26/08 and that the only item issued to me by the podiatrist was an chrono for
            foot insoles and thus I was issued a pair of foot insoles on the 7th of January 2009
12          which is false one.  Not only was I issued a pair of orthopedic shoes by the state,
            hence the lien on my inmate trust account in the amount of $340 within this time
13          frame mentioned above, but said it also included an written chrono for said shoes.
            Furthermore, I was never issued an pair of insoles for my feet.  I was issued an pair
14          or arch supports as the chrono PAC Byers so helpfully submitted with my 602
            stated. These arch supports were specially constructed to the exact specifications
15          of my feet in plaster of paris methods of my left foot and and foam composite
            taken of my right foot (the left foot was made from plaster of paris due to them
16          running out of foam composite material to get shape of foot.) This is an huge
            difference between the two shoe insoles/arch supports.  These shoes insoles that
17          were ordered for me on the 11th of May 2010 had no arch supports and absolutely
            have no effect whatsoever for my condition not to mention I have flat feet so an
18          shoe insole with no arch support is ludicrous as these insoles are and I again
            request that I be given orthopedic shoes ASAP.
19
     Id. at 17-18.    In response, to this second level appeal, prison officials stated,
20
21          Due to the complexity of the issues surrounding this appeal, the response has been
            split. This response will be limited to your request for the replacement of your
22          prescribed orthotic equipment and issuance of new chronos. All other issues will
            be addressed separately, including why your orthotic equipment was confiscated.

23
24   (Doc. 69-5 at 19)  The response continued,

25          After an inquiry into the whereabouts of your orthotic equipment it was
            determined that your orthotic equipment was seized on 04/24/10 by custody
26          officers and placed into evidence at the Investigative Services Unit pending an
            investigation into an incident.

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] The complaint continues to describe the impacts this has caused Plaintiff and to note that the action violates the
28   law. (Doc. 69-5 at 18)

On 08/04/10 permission was granted to release your arch supports by the Chief Deputy Warden as they were not part of the investigation process. Your arch supports were delivered to you in the Administrative Segregation Unit by R. Heck AGPA, ADA Unit. However, your white tennis shoes are being held as evidence in the Investigation Services Unit. Per policy, you may request the return of your shoes and any other item that was confiscated on 04/24/10 after December 16, 2010. Your white tennis shoes will not be replaced as they were not prescribed orthotic equipment and no medical indication exists for replacing your white tennis shoes with orthotic shoes.

Id. at 20.  As a result, on August 4, 2010, the appeal was partially granted.  Id.

Again, Plaintiff appealed this determination.  (Doc. 69-5 at 13)  Plaintiff wrote, "Yes, I am dissatisfied.  I am being denied my orthopedic shoes by agents of the CSATF/SP in retaliatory fashion for pursuing my rights.  I submit this appeal with the facts given and with add nothing further."  Id.

On September 30, 2010, the Appeals Examiner noted,

At the Director's Level of Review, the appellant continues to state that he has been denied his orthopedic shoes and he believes this is retaliatory by staff at SATF.

In reviewing the documents included in this appeal, the examiner notes the appellant argues that the evidence he had orthotics is shown on his trust account as he had a lien of $340 in the timeframe mentioned in this appeal. The examiner researched the appellant's trust account information via the Trust Restitution Accounting Canteen System (TRACS). Going back to November 2008, there is no reference to an orthotics charge. The appellant has had zero balance in his trust account since November 2008.

The appellant must understand that medical diagnosis and treatment recommendations can vary between facilities, specialists, and physicians throughout the CDCR. If evaluations produce different diagnoses or accommodation recommendations, then medical chronos will be generated accordingly. An accommodation must be deemed medically necessary by the Current medical staff in charge of the appellant's care. Pursuant to the California Code of Regulations, Title 15, Section (CCR), 3350(b)(l ), "Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care." The appellant was examined and evaluated by PA Byers who issued the appellant insoles. In addition, the appellant received his previous arch supports once the investigation allowed that release. The examiner notes that pursuant to the Disability and Effective Communications System, the· appellant does not have a disability as recognized by the Armstrong Remedial Plan (ARP). After considering the evidence and arguments herein, it has been determined that staff acted appropriately on the appellant's request. No further review is required by the DLR.

[¶¶]

This decision exhausts the administrative remedy available to the appellant within CDCR.

1    Id. at 8-9.

2         Defendants argue that IA #1799 does not exhaust his claims for any incidents that

3    occurred after April 26, 2010.  (Doc. 69-1 at 4, 10-14; Doc. 69-2 (Fact 9-13); Doc. 69-3; Doc. 69-

4    5).  In particular, they argue that this grievance does not squarely raise the issue of retaliation.  As

5    noted above, Plaintiff does not claim that the confiscation of the orthotic devices was motivated

6    by retaliation in either his first or second level review.  (Doc. 69-5 at 16, 18, 19-20)  Instead, in

7    his appeal to the Third Level, he seems to claim that the continued refusal to grant the return of

8    the items during the grievance process is or has occurred due to retaliation.  He does not describe

9    any events which give rise to an inference that retaliation was occurring at the time he submitted

10   his grievance originally and, indeed, refuses to provide any further detail and rests upon his

11   previous statements.  Thus, the Court cannot conclude that this IA raised the issue of retaliation

12   but, instead, used the term "retaliatory" only as an epitaph, expressing his discontent with the

13   outcome of the grievance process.  Even if he intended to raise retaliation, he failed to do so until

14   the Third Level appeal. This fails to comply with the requirements of the CDCR's grievance

15   process through which every complaint must be raised at the lowest level first.

16        On the other hand, Defendants argue that Plaintiff's allegations in IA #1799 "are not

17   specific to" the claims he is proceeding on in this action.  (Doc. 69-1, 4:8-18, 10:14-23.)  The

18   appeals process does not require that inmates draft their grievances with the precision of an

19   attorney.  An inmate appeal/grievance is sufficient if "'it alerts the prison to the nature of the

20   wrong for which redress is sought.'"  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) citing

21   *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  "The primary purpose of a grievance is to

22   notify the prison of a problem and facilitate its resolution, not to lay groundwork for litigation"

23   *Id.*, at 1120, *ref Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) cited with approval in

24   *Jones*, 549 U.S. at 219.  A prisoner's grievance/appeal must "provide enough information . . . to

25   allow prison officials to take appropriate responsive measures."  *Johnson v. Testman*, 380 F.3d

26   691, 697 (2nd Cir. 2004) cited with approval in *Griffin*, at 1120.  Thus, if an inmate is going to

27   file suit on the basis of wrongdoing by a prison official, that inmate's grievance/appeal must place

28   prison officials on notice as to the basis of the alleged wrongdoing.

1    Plaintiff's third amended complaint takes issue with Gallagher's conduct in August 2010.

2    (Doc. 31 at 8)  Plaintiff contends that due to retaliatory animus, Gallagher refused to provide him

3    his shoes–though giving him his orthotic inserts—and laughingly acknowledged that the inserts

4    were useless without the shoes.  *Id*.  Plaintiff alleges further that due to Gallagher's intent to

5    retaliate against him, he told the medical personnel falsely that the shoes were not needed and

6    also lied about the shoes being "personal shoes" which Gallagher knew would cause Plaintiff to

7    be deprived of them—and, hence, the use of his orthotic inserts—while housed in Ad Seg.  *Id*.

8    An inmate grievance that sets forth a complaint of a continuing nature can suffice to

9    exhaust the inmate's available administrative remedies.  *See* e.g. *Victory v. Barber*, 2009 WL

10   2986418, *7-9 (E.D. Cal. 2009) (finding, for purposes of compliance with the PLRA, a claim is

11   exhausted if it is a continuation of a problem raised by a prior fully exhausted inmate grievance);

12   *Lewis v. Naku*, 2007 WL 3046013, *5 (E.D. Cal. 2007) (finding that an inmate need not

13   repeatedly exhaust the same grievance; "[P]risoners are not required to file and exhaust a separate

14   grievance each time they allegedly receive inadequate medical care of an ongoing condition.").

15   However, the situation here is unlike those described in *Lewis* or *Victory* because it is not a mere

16   continuation of wrongful conduct.

17   Instead, the claims against Gallagher involve entirely separate conduct—retaliation—from

18   that which was the subject of the complaint made in April 2010, though the result was the same—

19   denial of podiatric treatment.  Though prison officials were fully aware that Plaintiff claimed to

20   be in need of replacement of the medically prescribed orthotics due to his April 2010 complaint,

21   they were never apprised of any interference with the investigation into whether the shoes should

22   be returned and were not informed that an officer knowingly prevented Plaintiff from receiving

23   medical care by lying to medical investigators.   Though "the grievant need not lay out the facts,

24   articulate legal theories, or demand particular relief" (*Johnson*, 380 F.3d at 697 (quoting *Strong v.*

25   *David*, 297 F.3d 646, 650 (7th Cir.2002)), there must be sufficient information provided to notify

26   prison personnel of a problem for exhaustion purposes.  *Griffin*, 557 F.3d at 1120.  This did not

27   occur here.

28   Because Plaintiff did not raise a retaliation claim in a grievance starting at the first level,

1    prison officials were denied the opportunity to investigate it.  And, Plaintiff provides no

2    admissible evidence either to prove that he raised it only to have prison staff ignore it.  Clearly,

3    prison officials did not consider a claim of retaliation and, indeed, could not have done so given

4    Plaintiff refused to provide any detail about how he claimed he was suffering retaliation.  Indeed,

5    the April 2010 grievance raises entirely different conduct from that which he charges Gallagher

6    was engaged in during August 2010.   He is not entitled to submit a grievance as a "placeholder"

7    against *any* future wrongful acts by prison officials that bears the slightest reference to past

8    conduct and then make the argument that he has exhausted his administrative remedies as to these

9    future acts.  This would comply neither with the spirit of the PLRA nor its letter.  Accordingly,

10    Defendants are entitled to summary judgment for Plaintiff's failure to exhaust available

11    administrative remedies on his claims against Defendant Gallagher.

12                    **2.  Inmate Appeal #2564**

13         Defendants argue that, even though Plaintiff complained in IA #2564 of Defendant Goss'

14    actions that denied him adequate due process, it does not suffice for exhaustion purposes since he

15    did not pursue it to obtain a Third Level decision.  (Doc. 69-1 at 5, 10-11)

16         In IA #2564, Plaintiff initially stated that the 115 hearing which Defendant Goss

17    conducted "was not in accordance with established CDCR Rules and violated [Plaintiff's] rights

18    in various areas including due process" and requested that his "CDC 115 hearing be reheld [sic]

19    and that [he] be given a full opportunity to have an adequate defense prepared with an [sic]

20    complete CDC 115 [illegible] and full IE report as ordered by Lt. Poppel."  (Doc. 69-7 at 5, 11.)

21    Both the informal and First Level of review were bypassed and Plaintiff's request was partially

22    granted at the Second Level, indicating a "modification order shall be generated stipulating the

23    RVR dated April 24, 2010, Attempted Murder of an Inmate, Log # C-10-05-023, be ordered re-

24    issued and re-heard."  (*Id.*, at pp. 6, 9, 10.)

25         Because the Second Level ruling granted Plaintiff precisely that which he requested,

26    Plaintiff was not required to seek a Director's Level review.  *See Harvey v. Jordan*, 605 F.3d 681,

27    684-85 (9th Cir. 2010) (finding prisoner had exhausted where his inmate appeal received a

28    "partial grant" of his first request and that "[a]n inmate has no obligation to appeal from a grant of

1    relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies"). Thus,

2    IA #2564 addresses the claim that Plaintiff exhausted his available administrative remedies on his

3    claim that Defendant Goss violated his rights to due process and Defendants are not entitled to

4    summary judgment thereon.

5                                  **3.  Inmate Appeal #4054**

6        The evidence submitted by Defendants shows that Plaintiff complained in IA #4054 that

7    an officer (not a party to this action) sexually harassed him for which Plaintiff filed repeated

8    inmate grievances which were all discarded or blocked by prison guards.  (Doc. 69-9 at 36, 38.)

9    In two pages of handwritten attachments to this IA at the informal level, Plaintiff detailed various

10    forms of retaliation to which he was subjected after his attempts to file grievances regarding the

11    officer's sexually harassing actions.  (*Id.* at pp. 37, 38.)  Plaintiff detailed Defendant Goss'

12    attempts to get Plaintiff to withdraw a grievance against the harassing officer as well as

13    Defendant Goss' violation of Plaintiff's due process rights in a subsequent CDCR 115 hearing and

14    other retaliatory actions by Defendant Goss and others when Plaintiff declined to do so.  (*Id.*)

15    The content of IA #4054 sufficiently addressed all of his claims of retaliatory conduct in this

16    action which Plaintiff noted were premised on his filing of a grievance against the officer who

17    sexually harassed him and his due process claim against Defendant Goss, parallel to his

18    allegations in this action.

19        Defendants do not argue that IA #4054 was insufficient to place prison officials on notice

20    of his claims in this action.  Rather, they assert that Plaintiff did not pursue it through the

21    Director's Level and prematurely filed this action on those claims arguing that IA #4054 "was not

22    even accepted at the First Level until after this action was filed on October 1, 2010, and that

23    Plaintiff failed to submit it to the Second and Third Level even though he was informed that

24    remedies remained available to him at those levels."  (*See* Doc. 69-1, 5:14-21, 9:16-24 (both

25    citing DUF 19).)

26        While Plaintiff makes argument counter to this in his opposition, he fails to provide any

27    evidence—despite being provided specific instruction that he was required to do so (Doc. 69 at 2-

28    3)—such as a declaration or affidavit, to support his position in this regard.  Plaintiff fares no

1    better when the 3rdAC, which was signed under penalty of perjury, is reviewed.  According to the

2    allegations in the 3rdAC, the IA that Defendant Goss destroyed in front of Plaintiff was the IA

3    that Plaintiff filed against another officer alleging sexual harassment, not IA #4054.  (Doc. 31, p.

4    4.)

5           The evidence from Defendants shows that Plaintiff signed IA #4054 at the informal level

6    on August 17, 2010 and it bears a stamp near the lower right corner reflecting that it was received

7    by "INMATE APPEALS BRANCH" on "Aug. 25, 2010," as well as additional stamps both

8    above and below this stamp reflecting "CSATF APPEALS" dated Oct. 13, 2010 and Oct. 31,

9    2010.  (Doc. 69-9, p. 36.)  It is stamped "assigned" for First Level review on November 1, 2010,

10   noted as due on December 15, 2010, and noted as returned to Plaintiff on December 9, 2010.  (*Id.*,

11   at p. 37.)

12          IA #4054 did not suffice to exhaust Plaintiff's available administrative remedies prior to

13   filing suit.  *Jones*, 549 U.S. at 211; *McKinney*, 311 F.3d at 1199-1201.  It is true that IA #4054

14   was processed as a staff complaint and an investigation was conducted, which is precisely what

15   Plaintiff requested.  (Doc. 69-9, pp. 36, 40-41.)  It is also true that, where an inmate's grievance is

16   characterized by prison officials as a "staff complaint" and processed through a separate

17   confidential process, prison officials lose any authority to act on the subject of the grievance.  *See*

18   *Brown*, 422 F.3d at 937 (citing *Booth*, 532 U.S. at 736 n. 4).  However, while a Plaintiff might be

19   satisfied with an investigation being conducted, he will not have exhausted his available

20   administrative remedies, and so may not file suit, prior to the conclusion of the investigation.  *See*

21   *Brown*, at 942.  Since the investigation of Plaintiff's allegations in IA #4054 did not conclude

22   until December 1, 2010, Plaintiff's filing of this action on October 1, 2010 was premature for IA

23   #4054 to have exhausted his due process claims against Defendant Goss and his retaliation claims

24   in this action.

25          Additional issues are raised by the timing between Plaintiff's filing of this action (on

26   October 1, 2010), the conclusion of the investigation into IA #4054 (on December 1, 2010 -

27   which would suffice for exhaustion purposes, *see Brown*, at 942), and the filing of the Third

28   Amended Complaint (on August 27, 2013 upon which Plaintiff is proceeding).

A plaintiff may proceed on new cognizable claims stated in an amended complaint if his administrative remedies were exhausted after the filing of the original complaint, but prior to the filing of the amended complaint. *Rhodes v. Robinson*, 621 F.3d 1002, 1003 (9th Cir. 2010). At first glance, it would appear that IA #4054 would suffice for exhaustion purposes on Plaintiff's claims stated therein in light of *Brown* and *Rhodes*. However, the key is that the events giving rise to the "new" claims must not have occurred until after the filing of the original complaint, but their precipitating events must be related to the events alleged in the original complaint. *Rhodes.* at 1003. The cognizable claims upon which Plaintiff is proceeding in this action are based on precipitating events which occurred *before* he filed this action. Thus, they are not "new" within the meaning of *Rhodes* so as to allow IA #4054 to suffice for exhaustion purposes.

A more recent ruling holds that "claims that arose as a cause of action prior to the filing of the initial complaint may be added to a complaint via an amendment, as long as they are administratively exhausted prior to the amendment." *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014). In *Cano*, the Plaintiff initially alleged that he did not receive proper medical care for his mental illness which resulted in him becoming suicidal. *Id.*, at p. 1216. A little over five months later, Cano filed both a motion for leave to add claims and a First Amended Complaint adding Count II for violation of his freedom of religion because kosher food was not made available to him and Count III for denial of meaningful access to the courts because a self-help litigation manual had been removed from the prison library without substitution of a similar litigation aid -- both of which were not related to Claim I. *Id.* The District Court dismissed Counts II and III on the grounds that the administrative appeals submitted by Cano as to those counts were dated after the filing date of the initial complaint. The Ninth Circuit reversed, holding that the date of the filing of the First Amended Complaint was the operative date by which Plaintiff had to exhaust his available administrative remedies on Counts II and III with which Cano had complied. The pivotal fact appears to be that Cano did not attempt to pursue any action in the courts on Counts II and III (by making any allegations regarding them) until after he had exhausted his available administrative remedies which complied with the main purpose of the PLRA. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions

1    under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

2    prison, or other correctional facility until such administrative remedies as are available are

3    exhausted"); *see also Griffin*, 557 F.3d at 1119.

4              In the case at bar, it cannot be said that Plaintiff waited to present his claims of retaliation

5    against all Defendants and violation of his due process rights against Defendant Goss until after

6    his IAs on those issues had been exhausted as these were among the allegations in Plaintiff's

7    original Complaint.  (Doc. 1.)  Plaintiff first stated a cognizable retaliation claim against

8    Defendant Goss in the First Amended Complaint, which was filed on February 15, 2013.  (*See*

9    Docs. 18, 21.)  The rest of his cognizable claims were first stated in the Third Amended

10   Complaint, which was filed on August 27, 2013.  (*See* Docs. 1, 17, 18, 19, 21, 24, 30, 31, 42.)

11   While most of Plaintiff's claims in this action were not cognizable until he filed the Third

12   Amended Complaint, this was not because he waited for the IA process to run its course to

13   exhaust his administrative remedies prior to bringing his claims; rather, he repeatedly attempted

14   to state cognizable claims and simply was unable to do so until his fourth try.  This does not

15   parallel the plaintiff in *Cano* waiting to raise Claims II and III until after his administrative

16   remedies had been exhausted.

17             Thus, even though Plaintiff exhausted his administrative remedies for his claims in IA

18   #4054 on the date that the investigation concluded (December 1, 2010) it does not suffice for

19   exhaustion purposes as to any of Plaintiff's cognizable claims in the Third Amended Complaint

20   since he did not wait until IA #4054 had been exhausted to attempt to state those claims in this

21   action.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation

22   claims[8] against Defendant Goss.

23   **VI.     <u>Defendants' Requests for Preliminary Hearing</u>**

24             While there are material issues of fact to prevent a wholesale grant of Defendants motion

25   for summary judgment, all applicable evidence on those issues has been submitted.  Defendants

26   have failed to demonstrate that an evidentiary hearing would be appropriate here or, indeed, that

27   ───────────────────

28   [8] As previously discussed, Plaintiff properly exhausted his due process claim against Defendant Goss in IA #2564, so Defendants are not entitled to summary judgment thereon.

16

1   Fed. R. Civ. P. 56 permits such an evidentiary hearing.  Thus, the request is **DENIED**.

2   **VII.**   **Plaintiff's Objection to Stay of Discovery**

3        Plaintiff filed objections to the Court's order (Doc. 86) staying discovery in this matter

4   until the ruling on Defendants' motion for summary judgment issues, filed on August 29, 2014

5   (Doc. 90), which is construed as a motion for reconsideration.  Defendants have not filed an

6   opposition or otherwise responded.  The motion is deemed submitted.  L.R. 230 (l).

7        Federal Rule of Civil Procedure 60(b)(6)[9] allows the Court to relieve a party from an order

8   for any reason that justifies relief. Rule 60(b)(6) "is to be used sparingly as an equitable remedy

9   to prevent manifest injustice and is to be utilized only where extraordinary circumstances . . ."

10  exist.  *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (internal quotations marks and

11  citation omitted).  The moving party "must demonstrate both injury and circumstances beyond his

12  control . . . ."  *Id.* (internal quotation marks and citation omitted).  Further, Local Rule 230(j)

13  requires, in relevant part, that Plaintiff show "what new or different facts or circumstances are

14  claimed to exist which did not exist or were not shown upon such prior motion, or what other

15  grounds exist for the motion," and "why the facts or circumstances were not shown at the time of

16  the prior motion."

17        "A motion for reconsideration should not be granted, absent highly unusual

18  circumstances, unless the district court is presented with newly discovered evidence, committed

19  clear error, or if there is an intervening change in the controlling law," and it "may *not* be used to

20  raise arguments or present evidence for the first time when they could reasonably have been

21  raised earlier in the litigation."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

22  F.3d 873, 880 (9th Cir. 2009) (internal quotations marks and citations omitted) (emphasis in

23  original).

24        Plaintiff's main objection to the order staying discovery until resolution of Defendants'

25  motion for summary judgment is that it issued so quickly that he did not have time to file an

26  opposition to Defendants' request/motion.  However, that order expressly noted that Plaintiff was

27
---
[9] Plaintiff's objections/motion for reconsideration are properly considered under Federal Rule of Civil Procedure
28  60(b)(6) since the Magistrate Judge order to which he objects was not dispositive.

provided the requirements to oppose a motion for summary judgment, which included seeking an extension to conduct discovery necessary to file an adequate opposition, but that Plaintiff had filed an opposition rather than ask for an extension to conduct needed discovery.

Plaintiff has not shown any new or different facts or circumstances, newly discovered evidence, or an intervening change of law to support his motion for reconsideration, nor do his objections show any discovery that he might have conducted which would help him to fare better than as is already being recommended herein.  The order staying discovery was supported by the record and proper analysis.  It is noted that both sides will be allowed to conduct discovery once an order adopting or declining to adopt is issued by the District Judge.

Accordingly, Plaintiff's motion for reconsideration of the order staying discovery, filed August 29, 2014 (Doc. 90), should be denied and any objections based thereon should be overruled.

**VIII.   Plaintiff's Motion for Additional Discovery**

On September 19, 2014, Plaintiff filed a motion for additional discovery under Rule 56(d)[10] of the Federal Rules of Civil Procedure. (Doc. 94.)

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  In seeking relief under Rule 56(d), Plaintiff bears the burden of specifically identifying relevant information, where there is some basis for believing that the information actually exists, and demonstrating that the evidence sought actually exists and that it would prevent summary judgment.  *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (quotation marks and citation omitted); *Getz v. Boeing Co.*, 654 F.3d 852, 867-68 (9th Cir. 2011); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006).

---

[10] While Plaintiff delineates that he seeks relief under Rule 56(f), he desires a delay in ruling on the motion for summary judgment to conduct further discovery as addressed in Rule 56(d) (which was renumbered from 56(f) in the 2010 Amendment).  Currently, Rule 56(f) addresses entry of judgment independent from a motion for summary judgment which Plaintiff is not seeking.

1    Plaintiff has made no showing that the discovery he seeks would allow him to fare better

2    than is already recommended herein.  Plaintiff's bare desire to conduct discovery before

3    responding to Defendant's motion does not entitle him to relief under Rule 56(d).  *Naoko Ohno v.*

4    *Yuko Yasuma*, 723 F.3d 984, 1013 n.29 (9th Cir. 2013) (evidence to be sought through discovery

5    must be based on more than mere speculation).  Therefore, Plaintiff's motion should be denied.

6    **VIII.   <u>Conclusion and Recommendations</u>**

7    As set forth herein, Defendants Goss is entitled to summary judgment on some, but not

8    all, of Plaintiff's claims and Defendant Gallagher is entitled to summary judgment for Plaintiff's

9    failure to exhaust administrative remedies on his claims before filing suit in violation of the

10   PLRA.  Specifically, Plaintiff's exhausted his due process claim against Defendant Goss in IA

11   #2564 but Plaintiff did not exhaust his retaliation claim against Defendant Goss nor his claims

12   against Defendant Gallagher for retaliation and deliberate indifference to his serious medical

13   needs.

14   Accordingly, the Court HEREBY RECOMMENDS:

15   1.   That the motion for summary judgment, filed July 22, 2014 (Doc. 69), be

16        GRANTED IN PART and DENIED IN PART as follows:

17        a.   The motion as to Defendant Gallagher be GRANTED;

18        b.   The motion as to Defendant Goss be DENIED;

19   2.   That the motion by Defendants Goss and Gallagher that a preliminary hearing be

20        set to resolve any factual disputes be DENIED;

21   3.   That the motion to strike Plaintiff's opposition to their motion for summary

22        judgment, filed by Defendants Goss and Gallagher on August 25, 2014 (Doc. 88),

23        be DENIED;

24   4.   That Plaintiff's objections to the Court's order (Doc. 86) staying discovery in this

25        matter until the ruling on Defendants' motion for summary judgment issues, filed

26        on August 29, 2014 (Doc. 90), be OVERRULED and to the extent it may be

27        construed as a motion for reconsideration be DENIED; and

28   5.   That Plaintiff's motion for additional discovery, filed September 19, 2014 (Doc.

94) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within 30 days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **November 18, 2014**                    **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE