# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH, | Case No. 1:10-cv-01814-DAD-JLT (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR TERMINATING SANCTIONS** |
| v. | |
| ALLISON, et al., | **(Doc. 196)** |
| Defendants. | **THIRTY DAY OBJECTION DEADLINE** |

On May 10, 2016, Defendants filed a motion for court intervention seeking terminating sanctions under the Court's inherent powers against Plaintiff because of his continued inappropriate and sexually harassing conduct. (Doc. 196.) Because the Court finds that Plaintiff has continued to engage in sexually harassing behavior, despite clear warning that such conduct would not be tolerated, the Court recommends that Defendants' motion be **GRANTED** and that this action be **DISMISSED with prejudice**.

**I. DEFENDANTS' MOTION**

Defendants' motion for terminating sanctions provides a detailed chronology of Plaintiff's sexually harassing and offensive conduct in this action. Plaintiff began his harassment in a meet-and-confer letter concerning his refusal to appear and be deposed. In the letter, Plaintiff stated that defense counsel "sound[ed] quite hot" during their earlier phone conversation. (Doc. 167, p. 13.) Referring to counsel's meet-and-confer efforts, Plaintiff declared "[M]e has the sneakiest of

1

suspicions that someone has unleashed quite a[] whoop ass kitty upon me," and quipped "[o]h boy this is great! ☺" (*Id*.)  He concluded the letter with a post script stating, "In the spirit of transparency within the discovery process and compromise[,] if while cracking your whip you decide to wear a[] pair of them thigh high boots for the duration of said conference why I swear I'll be putty in your hands.  WHOOP ASS KITTY!!!" (*Id*.)

Plaintiff argued in his opposition to Defendants then pending motion for judgment on the pleadings that "[t]he Court[']s ruling . . . under the guidance of Her Honor [1] Jennifer L. Thurston and Judge Lawrence J. O'Neil" addressed the issue.  (Doc. 164, p. 3.)  Defendants assert that Plaintiff singled out and distinguished the female undersigned's findings from the male District Judge's order on the same subject, and proclaimed, "I daresay that there is room for only one law maker around these here parts sister[,] can I get a[] whoop ass kitty (**Donk-Donk**) Law & Order please!☺" (*Id.*)

On February 16, 2016, defense counsel filed a motion for court intervention.  (Doc. 167.) On February 18, 2016, the Court ordered Plaintiff to show cause ("OSC") in thirty days as to why sanctions should not be imposed for his inappropriate and sexually harassing conduct.  (Doc. 168.) On March 2, 2016, Plaintiff filed a motion for protective order[1], in which he asked that defense counsel and the entire California Attorney General's Office be disqualified from litigating this case, unless defense counsel would call him "a dirtbag" and tell him she wanted to spank him:

> The plaintiff would like to stipulate though that if Ms. Ganson is willing to call him on the phone and essentially state to the plaintiff that he is a[] dirtbag (#1) and how she wishes she could just whoop my behind and just [be] overall outrageously sassy, well I'm just willing to let bygones be bygones yeah?

(Doc. 170, p. 8 (footnote).)

Thereafter, on April 4, 2016, Plaintiff filed his opposition to a pending defense discovery, in which Plaintiff responded to the OSC.  (Doc. 184, pp. 5-6.)  In his response, Plaintiff apologized for his conduct and admitted to not having conformed to expected conduct in legal proceedings. (*Id.*)  The Court discharged the OSC on April 5, 2016 because it found Plaintiff demonstrated

---

[1] It is unclear whether Plaintiff had received the OSC when he signed this motion on February 23, 2016, though the Court suspects he was based upon the timing of this filing.  (*See*  Doc. 170.)

2

1  contrition and because he lacked experience in federal court such to have demonstrated knowledge
2  of the accepted norms of conduct.. (Doc. 186.)  However, the Court strongly warned Plaintiff
3      **that any further behavior by him that is directed at opposing counsel or that occurs in counsel's presence that is demeaning, sexually harassing or provocative WILL NOT be tolerated.  The Court WILL address any further such behavior by issuing severe sanctions, up to and including termination of this action**.
6  (*Id.* (emphasis in original).)
7      Seventeen days later, Plaintiff filed a document in support of his opposition ("the
8  Document") to a then pending defense motion, in which he titled the first section "Obeisance" and
9  addressed "this 'especially broad' court" regarding his objections to "Her Honor's" recent findings
10  and recommendations.  (Doc. 195, P. 1.)  In a footnote to the "Obeisance" title, Plaintiff indicated
11  his intent of this word to imply a stick-figure caricature of himself on his hands and knees, referred
12  to himself as a "**Dirtbag!**" and expounded "I'm behaving but its hard ☺ **really really hard** believe
13  me I'm on fire!!!!"  (*Id.* (emphasis in original).)  Plaintiff's Documents ended with a full-page self-
14  portrait, inscribed with a large "V" over the mouth, and beginning over his neck, Plaintiff wrote:

> Declarations
>
> One does invoke the right
> to remain silent . . . . . .
>
> However, is it too much to ask for one to sit
> on my face before ruling?

19  (*Id.* at 7.)  Defendants thereafter filed the present motion for terminating sanctions.

20  **II. LEGAL STANDARDS FOR TERMINATING SANCTIONS**

21      **A. The Court's Inherent Power**

22      "It has long been understood that certain implied powers must necessarily result to our
23  Courts of justice from the nature of their institution, powers which … are necessary to the exercise
24  of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123 (1991) (internal
25  quotation marks and citation omitted). "For this reason, Courts of justice are universally
26  acknowledged to be vested, by their very creation, with power to impose silence, respect, and
27  decorum, in their presence and submission to their lawful mandates." *Chambers*, 501 U.S. at 43
28  (internal quotation marks and citation omitted).  Inherent powers are properly exercised to

"protect[ ] the due and orderly administration of justice and maintain[ ] the authority and dignity of the court." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (internal quotation marks omitted).  However, because of their very potency, inherent powers must be exercised with restraint and discretion.  *Chambers*, 501 U.S. at 44.

Sanctions may be imposed under a court's inherent authority on "parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons," *Sassower v. Field*, 973 F.2d 75, 81-82 (2d Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993), as well as for delaying or disrupting litigation, or for taking actions in the litigation for an improper purpose -- all of which are abusive of the judicial process, *Chambers,* 501 U.S. at 43-45.  The litigant to be sanctioned must have engaged either "in bad faith or willful disobedience of a court's order," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47, 111 S.Ct. 2123 (1991), or conduct which constitutes, or is tantamount to, bad faith, *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980); *Miller v. City of Los Angeles,* 661 F.3d 1024, 1036 (9th Cir. 2011); *Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir. 2001), *cert. denied*, 534 U.S. 1066 (2001); *Fink v. Gomez,* 239 F.3d 989, 993-94 (9th Cir. 2001).

"Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers,* 501 U.S. at 45-46.  Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc*., 50 F.3d 730, 732 (9th Cir. 1995) (internal quotation marks and citations omitted).  Sanctions, then, are justified "when a party acts for an improper purpose -- even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001).  Whether termed "willful misconduct" or conduct "tantamount to bad faith," such sanctionable conduct is "something more egregious than mere negligence or recklessness." *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009) (quoting *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003)).  However, recklessness combined with an additional factor such as frivolousness, harassment, or an improper purpose, also supports sanctions under the court's inherent authority.  *See Fink,* 239 F.3d at 994.

Upon one of the above requisite findings, courts can levy an assortment of sanctions under their inherent power, including monetary awards, attorneys' fees, adverse inference jury instructions, and dismissal of claims. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F.Supp.2d 1132, 1135 (N.D.Cal.2012) (collecting cases), *as modified in Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F.Supp.2d 976, 1000 (N.D.Cal.2012).

### B. Federal and Local Rules

#### 1. Federal Rules of Civil Procedure

Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: … (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  When evaluating the imposition of sanctions, Rule 11 requires the Court to consider not whether the party demonstrated subjective good faith in filing the document, but whether the party acted objectively reasonably in doing so. *G.C. & K.B. Investments v. Wilson,* 326 F.3d 1096, 1109 (9th Cir. 2003).

This Court also has the authority to sanction litigants who fail to comply with its orders. Specifically, Rule 41(b) authorizes courts to dismiss an action for failure to comply with its orders. Fed. R. Civ. P.  41(b).  Although that rule appears to contemplate that dismissal will be precipitated by a motion from the opposing party, a court may act *sua sponte* under Rule 41(b). *Link v. Wabash R. Co*., 370 U.S. 626, 630 (1962); *Pagtalunan v. Galaza*, 291 F.3d 639, 640-43 (9th Cir. 2002) (affirming district court's *sua sponte* dismissal of habeas petition with prejudice "for failure to prosecute and failure to comply with a court order")*, cert. denied*, 538 U.S. 909 (2003).

#### 2. Local Rules

In addition, pursuant to the Court's Local Rules, this Court has the authority to impose any appropriate sanction to curtail abusive litigation tactics.  *See* E.D. Cal. L.R. 110 ("Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for

imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal"), *cert. denied*, 516 U.S. 838 (1995); *Delange v. Dutra Constr. Co., Inc.,* 183 F.3d 916, 919 n. 2 (9th Cir.1999) (per curiam) (district courts enjoy "broad discretion in interpreting and applying their local rules").

Individuals proceeding *pro se* are bound by the Court's Local Rules just the same as licensed attorneys. *See* E.D. Cal. L.R. 183 ("Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in *propria persona*.").

### III. PLAINTIFF'S OPPOSITION

In his opposition, Plaintiff asserts[2] various ridiculous explanations for his choice of words in his Document.[3]

First, Plaintiff asserts that the acts defense counsel complains of have "been previously argued and found that [sic] to have not even applied to her to begin with by the Court . . . ." (*Id.*, p. 3.) However, as previously mentioned the OSC was discharged on Plaintiff's explanation and what was believed to be his sincere apology. (*See* Doc. 186.) This was not a finding in Plaintiff's favor, it was a one-time clemency for his sexually harassing acts based on his naiveté of legal practice and perceived contrition, which explicitly admonished him to refrain from any similar conduct in the future. (*Id.*) Indeed, the Court found true that Plaintiff intentionally and purposefully and for the reason of causing the attorney emotional distress, sexually harassed her.

---

[2] Notably, Plaintiff does not present any evidence to support his assertions/argument and his opposition is neither signed under penalty of perjury, nor accompanied by a declaration. Further, though he attached various pages as exhibits to his opposition, he fails to refer to any exhibits in his opposition, or to show the basis for their submission, and the Court is unable to find their relevance to this issue.

[3] Plaintiff's proffered alternative definitions for words and phrases which were the subject of the OSC are not considered since Plaintiff did not raise them in his response to the OSC. (Doc. 200, p. 5.) Further, Plaintiff's assertions that he has been subjected to various acts of malfeasance at the direction of the deputy attorney generals are not considered here. (*Id.*, pp. 6-9.) Plaintiff has alternate routes for recourse if he feels his rights have been violated beyond the pleadings in this action.

As to the Document, Plaintiff attempts to explain his use of the phrase "especially broad"[4] as a description of the "leeway" that this Court has extended to him by allowing him to amend his complaint three times; granting him multiple requested extensions of time; and in orders issued on motions that he has filed in this action which were "technically deficient" in which he states it was merely his "colorful commentary" to the undersigned who he feels taught him "law 101 for novices." (Doc. 200, pp. 3-4.)

Plaintiff asserts that his comments in the Document referring to the undersigned as a "Kitty Cat Owwwwwww [sic] had no basis of harassment of illegal nature whatsoever . . . ." (*Id.*, p. 4.) Notably, though Plaintiff asserts his use of the term was not intended to harass, his only explanation for calling the Court and defense counsel "Kitty Cat"[5] is that he has done so "for months" without objection. (*Id.*) However, this is untrue as his usage of "whoop ass kitty" was part of the defense motion upon which the OSC issued. (*See* Docs. 167, 186.) Further, merely because counsel chose to ignore is boorish and harassing language in the past does not imply that his conduct was or has become acceptable.

Plaintiff also argues that, rather than filing the present motion, defense counsel should have complained to her supervisor who would have then contacted prison officials, who would have investigated the issue and given him a warning to stop all such conduct that was found to be offensive. (Doc. 200, p. 9.) However, Plaintiff ignores this Court's admonition that he cease all objectionable behavior and the Court's warning that any such further behavior would not be tolerated and would be met with severe sanctions up to and including a recommendation for terminating sanctions. (*See* Doc. 186.)

Plaintiff attempts to explain his use of the word "obeisance" as the leading header on the Document by stating;

> Simply put Ms Ganson, I was reiterating her Honor's cited apology by referencing how hard it is to behave and not show **my** ass to you with your very overt

---

[4] Multiple colloquial meanings exist for the term "broad." It can be a description of the width of one's backside and, in decades past, has been an unflattering slang word to describe a female.

[5] Feline references also have negative colloquial connotations towards females which is, clearly, why Plaintiff chose to use this phrase.

>condescending, underhanded acts of shenanigans as to the word obeisance it means to bow as the caricature was doing to **her.** ☺

(Doc. 200, p. 11 (emphasis in original).)  Plaintiff fails to provide any explanation or evidence for his assertion that defense counsel is acts condescendingly, or why he feels this equates to "underhanded acts of shenanigans," and the Court finds none.  Moreover, even if this were true, resort to acts of sexual harassment is not the remedy.

Plaintiff's explanation and definition for his use of the word "obeisance" and what he intended by referencing a caricature do not help his cause.  While "obeisance" means to bow, one who bows in respect or apology to another does so from a position facing towards the other person presenting the top and back of one's head, rather than one's hind-quarters.  Further, Plaintiff asserts he intended the use of the words "its hard ☺ **really really** hard" to describe how difficult it is for him to maintain civility towards defense counsel.  However, Plaintiff provides no explanation for the latter part of that sentence "believe me I'm on fire!!!!"  When combined with the first segment, that sentence reads "I'm behaving but its hard ☺ **really really hard** believe me I'm on fire!!!!!" his intended sexual connotation is clear.

As to the picture attached at the end of the Document, Plaintiff asserts that it was;

>an act which was in direct conformance with her Honor's previous decree of the plaintiff not conducting any provocative or enlightening text in front of defense counsel as is not the Roman numeral of V equivalent of the number 5 in English? But in zazen madame [sic] since one is an active Buddhist upon contemplation one sits in acts of intense focusing but in lieu of your innuendo's and feminist ideology I say thus. Your insinuations of male counterparts dominating the workforce and creating hostile environments for women of stature to gain admittance without debasing themselves does have merit for many with many acts of harassment and sexual proclivities used as an [sic] tool of domination this is undeniable. The plaintiff is all for the equality of the workplace and in all arena's of public admittance and as such has no qualms of the feminist movement whatsoever or of being "dominated" by an woman[6] despite the actions of some overzealous judicial officer. The plaintiff has no evidence for your witchhunt [sic] madame [sic] but do stay proactive in your endeavors and in public service and oh do please vote Hillary 2016!\* **DirtBag V**.

(Doc. 200, pp. 11-12.)  At the bottom of the page with Plaintiff's above explanation, Plaintiff drew

---

[6] The phrase of "being 'dominated' by a woman" is rife with sadomasochistic innuendo.

the yin and yang symbol and states "* ☯ balance, opposites/attract, abstract, linear ☺" which raises further question of Plaintiff's intentions.[7] (*Id.*, p. 12.)

Plaintiff's assertion that the "V" drawn on the mouth of his picture was intended to reference his rights under the Fifth Amendment to avoid self-incrimination is inapplicable as this is not a criminal action where Plaintiff only need act civilly to opposing counsel and the Court. Further, Plaintiff's suggested implication of invoking the Fifth Amendment does not overcome his request for the undersigned to sit on his face before ruling -- which has blatant sexual implications.[8]

## IV. DISCUSSION

### A. Bad Faith/Willful Disobedience

The issue raised by Defendants' motion is whether Plaintiff has abused the judicial process by acting in bad faith, by engaging in conduct which is tantamount to bad faith, or in willful disobedience of this Court's order. *Chambers,* 501 U.S. at 43-47. As discussed below, the Court finds that Plaintiff has engaged in conduct which is both tantamount to bad faith and in willful disobedience of the order that discharged the OSC.

"Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers,* 501 U.S. at 45-46. Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc*., 50 F.3d 730, 732 (9th Cir. 1995) (internal quotation marks and citations omitted). Whether termed "willful misconduct" or conduct "tantamount to bad faith," such sanctionable conduct is "something more egregious than mere negligence or recklessness." *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009) (quoting *In re*

---

[7] It is also noted that the yin and yang symbol and its meaning of the attraction of opposites has at least one colloquial meaning which implies the attraction between the sexes and the act of sexual intercourse.

[8] Plaintiff' may have intended his use of the word "zazen" to refer to the Buddhist meditative discipline, but there is no basis to find that Buddhist's who engage in zazen do so while someone is sitting on their face or vice versa. His explanation to the contrary is patently incredible.

1  *Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003)). However, recklessness combined with an additional
2  factor such as frivolousness, harassment, or an improper purpose, also supports sanctions under the
3  court's inherent authority. *See Fink,* 239 F.3d at 994.
4        Plaintiff's filing of the Document constitutes "willful disobedience" of this Court's order
5  which discharged the OSC. *Chambers*, 501 U.S. at 46-47. Additionally, it cannot be said that the
6  offensive words Plaintiff used in the Document were innocently or mistakenly made since months
7  later, Plaintiff filed yet another document which contained sexually-charged, harassing statements.
8        Specifically, on June 8, 2016, Plaintiff filed a motion seeking court intervention[9] in which
9  he completely duplicated statements which were previously objected to and which he was
10 admonished to refrain from using in the future. Plaintiff restated his reference to defense counsel's

> voice sounding "hot," of referring to the sneakiest of suspicions that one has unleased quite a whoop ass kitty upon these proceedings of the plaintiff referring to putting up <u>no</u> resistance to Her Honor within an pretrial conference especially upon the wearing of them chic thigh high boots gals like to wear yaay!!! Of daresaying [sic] that there was room for only one lawmaker within these proceedings can I get an whoop ass kitty (Donk, Donk) law & order please.

15 He characterizes this as "harmless acts especially in light of the record of judgments within this
16 case." (Doc. 203, p. 13.) In his declaration attached thereto, Plaintiff states "That United States
17 Magistrate Judge Jenifer L. Thurston is one Helluva [sic] Kitty and the defense will not silence my
18 voice or opinion of this matter (nanny nanny boo boo ☹ pbbbsp raspberry (hee hee))." (*Id.*, at p.
19 16.) Such statements that Plaintiff will not be silenced, followed by jeering banter evinces that
20 Plaintiff's disobedience of this Court's order which discharged the OSC is willful.
21       Further, Plaintiff then presents a poem entitled "Lawless" which he "submits on the record
22 for all time an[1] original poem to Her Honor for she's inspirational . . . ." In the referenced footnote,
23 Plaintiff states;

> **Yes, this is my original work** less these parasitic flea's dare stole it like they do my artwork and other things of artistic nature originally one was to wait until the proceedings ended to send it but then I realized it can't be seen as an act of attempting improper influence etc., since **DAD's** edicts are what will decide these proceedings no need for applause or response your honor instead can you just go home and upon seeing an [sic] mirror turn around and back up saying to yourself

---

[9] The content of Plaintiff's motion is not considered other than for his sexually harassing statements made therein.

> the whole time beep, beep, beep and then just shake it un unhuh shake it un unhuh shake it   like a polarized picture **Owwwwwwwwww!!!**   I do every day its liberating I swear remember I said this previously in pleadings no objections super hater defense counselor ☺ hee hee **Dirtbag! V** oh less I forget I was wondering if possible can I have an autographed picture preferably an full body shot I want to draw you an [sic] mosaic on paper ☺

(Doc. 203, pp. 16-17.)

Plaintiff's persistence in making sexually harassing written statements, despite the Court's admonition and warning against doing so, demonstrates his obduracy. *Mark Ind., Ltd.*, 50 F.3d at 732.  In fact, Plaintiff signed the Document which precipitated Defendants' motion for terminating sanctions a mere two weeks after this Court's order issued discharging the OSC and warning Plaintiff of severe sanctions if he persisted in such offensive conduct.  (*See* Docs. 186, 195.)  In the Document, Plaintiff's footnote regarding a stick figure caricature which stated "I'm behaving but it's hard ☺ **really really hard**  believe me I'm on fire!!!!!" was prefaced by the date "04-5-16" which was the very date the Court signed and issued the order discharging the OSC.  Plaintiff's recitation of the date of the order discharging the OSC, in that context, signals his obduracy and his failure to respect the authority of this Court.  Plaintiff's additional attempt to explain his footnote in the Document as an act of submission is, for the reasons discussed above, rejected. Further, to the extent that Plaintiff's continued conduct might be deemed merely reckless, his refusal to comply with the order that discharged the OSC, coupled with the continued sexually suggestive and harassing content of his actions, equates at the very least to recklessness combined with harassment. *Fink,* 239 F.3d at 994.

For these same reasons, the Court finds Plaintiff's filing of the Document (Doc. 195) and his subsequent filing (Doc. 203), because of their sexually harassing content, were presented for an improper purpose in violation of Rule 11.  Fed. R. Civ. P. 11(b)(1). Further, given the explicit warning provided to Plaintiff in the order that discharged the OSC (Doc. 186) it was not objectively reasonable for Plaintiff to file any further documents which contained any sexually suggestive/harassing statements. *G.C. & K.B. Investments,* 326 F.3d at 1109.  Thus, sanctions under Rule 11 are appropriate.

Finally, Plaintiff's failure to heed the direction given in the order that discharged the OSC


(Doc. 186), subjects him to the authority of the Court to sanction his noncompliance -- up to and including dismissal of this action.  Fed. R. Civ. P. 41(b); L.R. 110, 183.

### B. Factors to Consider on Dismissal

District courts have the inherent power to control their dockets and "in the exercise of that power, they may impose sanctions including, where appropriate . . . dismissal of a case." *Thompson v. Housing Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  *See, e.g. Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Carey v. King*, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring *pro se* plaintiffs to keep court apprised of address*); Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to lack of prosecution and failure to comply with local rules).

In determining whether to dismiss an action for lack of prosecution, failure to obey a court order, or failure to comply with local rules, the Court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives.  *Thompson*, 782 F.2d at 831; *Henderson*, 779 F.2d at 1423-24; *Malone*, 833 F.2d at 130; *Ferdik*, 963 F.2d at 1260-61; *Ghazali*, 46 F.3d at 53.

The Court finds that the public's interest in expeditiously resolving this litigation, which has lingered on the docket for nearly six years, and the Court's interest in managing the docket weigh in favor of dismissal.  The third factor, risk of prejudice to Defendants, also weighs in favor of dismissal, both if Plaintiff's harassing actions causes current defense counsel to seek reassignment which would necessitate new counsel's review and familiarization of a case which has more than two hundred docket entries; and since a presumption of injury arises from

unreasonable delay in prosecuting an action. *Anderson v. Air West*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor -- public policy favoring disposition of cases on their merits -- is greatly outweighed by the factors in favor of dismissal discussed herein. Further, though public policy favors disposition of cases on their merits, there is also a public policy which strongly disfavors sexually harassing conduct. *E.g. Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342 (2004) (addressing elements for atmosphere of sexual harassment or hostility under Title VII); *Davis Next Friend LaSHonda D. v. Monroe County Bd. Of Educ.*, 526 U.S. 629 119 S.Ct. 1661 (1999) (imposing liability under Title IX for deliberate indifference to student-on-student sexual harassment); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998) (vicarious liability of employer under Title VII for actionable discrimination caused by a sexually harassing conduct of supervisor); *Wood v. Beauclair*, ---F.3d ---, 2012 WL 3800215, *6 (9th Cir. Sept. 04, 2012) (finding sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment).

Finally, a Court's warning to a party that his failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement. *Ferdik v. Bonzelet*, 963 F.2d at 1262; *Malone*, 833 at 132-33; *Henderson*, 779 F.2d at 1424. The Court's order that discharged the OSC expressly stated in bold and underlining;

> . . . **the Court cannot warn <u>Plaintiff strongly enough that any further behavior by him that is directed at opposing counsel or that occurs in counsel's presence that is demeaning, sexually harassing or provocative WILL NOT be tolerated. The Court WILL address any further such behavior by issuing severe sanctions, up to and including termination of this action.</u>**

(Doc. 186, p. 2.) Thus, Plaintiff had explicit warning that dismissal may result from his noncompliance with the Court's order. Plaintiff's interpretation that the above phrasing merely prohibited him from directing his comments at defense counsel errs since all documents filed in this action are automatically, electronically served on defense counsel who has an obligation to her clients to read, and thereby be exposed to, the contents of every page.

## V. RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that Defendants' motion for terminating

13

sanctions, filed on May 10, 2016 (Doc. 196), be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 22, 2016**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE